GEORGE W. BAUMHOFF v. OKLAHOMA CITY ELECTRIC AND
GAS AND POWER COMPANY, E. H. COOKE, G. W. WHEEL-
ER AND G. N. BEEBE.

(Filed March 4, 1904.)

1. **CONTRACT—War Revenue Stamps.** It is not necessary to the
sufficiency of a cause of action upon contract, to show or set out
the fact of the instrument having been stamped as required by
sec. 1, schedule A., chap. 806, U. S. Statutes at Large, 1901.

2. **SAME—Mutuality of.** There may be said to be mutuality of con-
tract where the agreement entered into between the parties is
binding alike upon each touching its ultimate performance. Both
parties must be bound or neither are bound.

3. **PETITION—When Sufficient.** A petition praying for the enforce-
ment of a contract, which, by its terms, provides for the sale of
certain properties named within ten days, after a mayor and coun-
cil of a city shall have passed an ordinance amending certain
franchise rights, which amendments were to be agreed upon by
the parties, and which petition alleges the satisfactory passage
of such amendments to such ordinance, is not demurrable upon the
ground that the petition is indefinite and uncertain and does not
state facts which are sufficient to constitute a cause of action.

4. **CONTRACT—Void as Against Public Policy.** A contract which pro-
vides for the sale of certain municipal franchises after such fran-
chises have been amended by the mayor and council of the muni-
cipality, and which contract contains no provision requiring the
action of either party further than to agree upon the amendment
desired before the same was introduced for the consideration of
the mayor and council, is not void as against public policy.
(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before
B. F. Burwell, Trial Judge.*

*H. H. Howard,* and *Flynn & Ames,* for plaintiff in
error.

*Shartel, Keaton & Wells, C. Porter Johnson* and *R. G.
Hays,* for defendant in error.

Opinion of the court by

GILLETTE, J.: This was an action brought in the district court of Oklahoma county against the Oklahoma Electric and Gas and Power Company et al. by George Baumhoff, to recover upon a contract for the sale of 1,500 shares of the capital stock of the defendant company.

The amended petition of plaintiff is as follows:

"Territory of Oklahoma, Oklahoma county. ss. In the district court of said Territory, within and for said county, in the third judicial district. George W. Baumhoff v. Oklahoma City Electric and Gas and Power Company, E. H. Cooke, G. W. Wheeler and G. N. Beebe, defendants. Petition. The said plaintiff complaining of the said defendants alleges and says:

"1. At all times herein mentioned the said Oklahoma City Electric and Gas and Power Company was a corporation organized and existing under the laws of the said Territory.

"2. That said company had its place of business at Oklahoma City, said county, where it was the owner of certain franchises, contracts, real estate, machinery, poles, wires and other apparatus, and was operating the same as an electric light power plant; and it was also the owner of certain gas pipe, machinery and fixtures.

"3. The capital stock of said corporation was $150,-000.00, divided into 1,500 shares of the par value of $100 each, all of which stock was, at the times herein mentioned, owned by the defendants, E. H. Cooke, G. W. Wheeler and G. N. Beebe.

"4. That on December 10, 1901, the plaintiff and defendants made and entered into a contract memorandum and agreement in writing, a true copy of which is hereto attached, marked, 'Exhibit A' and made a part thereof, by the terms of which the defendants agreed to sell and the

plaintiff to buy all of said capital stock, and to pay therefor the sum of $120,000.00, and further agreed to pay a sum not exceeding $2,000 for eight inch gas pipe then on the ground and in transit, and also to pay for an electric generator not to exceed $2,200, the defendants to pay all the other debts of said company.

"5. The plaintiff alleges that the capital stock and property covered by said contract, and which the defendants promised and agreed to so sell and deliver to him were, ever since have been, and are of the reasonable market value of more than $175,000.00, exclusive of the said sums he so agreed to pay on the debts of said corporation, and that on account of said contract and in pursuance thereof, and relying upon the performance of the same, he has expended time and money the extent and value of which exceed $5,000.

"6. The plaintiff says further that he has at all times been ready, able and willing to perform said contract on his part, and is now ready, able and willing to do so; that on December 30, 1901, he requested the defendants to proceed to perform said contract on their part, which they refused to do and refused to talk concerning such performance, and that he renewed said demand on December 31, 1901, and was then advised by them that they would not perform such contract; and that he has at all times been ready, able and willing to pay said $4,200 of the debts of said company, and has offered to do so, and demanded a performance on the part of the defendants.

"7. That on or about the 15th day of February, 1902, in pursuance of the terms and in the performance of said contract, the defendants entered into agreements or ordinances with said city, amending and extending the franchises of said corporation, such ordinances being numbered 283, 284 and 285; that the same were entirely satisfactory to plaintiff, and as soon as he learned of their existence he made known his satisfaction therewith to defendants; that plaintiff is a resident of St. Louis, in the State of Missouri,

and at the time said ordinances were passed was absent from Oklahoma City; that defendants purposely concealed from him the fact that said ordinances had become effective for the fraudulent purpose of preventing him from demanding a performance of the terms of said contract and making tender of the sum he was to pay thereunder within thirty days after the passage thereof; that promptly upon learning of the existence of said ordinance he came to Oklahoma City prepared to perform without delay, all the terms of said contract; that he immediately offered to do so and defendants refused.

"8.   That at the time of making such offer and demand the defendants were unable to perform the terms of said contract, for the reason that they had already sold and delivered said property to other persons unknown to plaintiff; that the defendants concealed the passage of said ordinances from plaintiff because at the time they had received an offer from said other parties for said property of $140,000 or $20,000 more than the plaintiff was to pay, of which fact plaintiff was ignorant and before, after learning of the existence of said ordinance, he was able to renew his demand for a performance of said contract, the defendants had put it out of their power to perform the terms of said contract by the sale and delivery of said property to such other persons, and thereby violated the terms of said contract of plaintiff; that plaintiff did not know of the violation of said contract by the sale and transfer of said property to such other persons until after his demand and tender of performance of the terms of the same and the refusal of defendants to perform such contract, and the defendants fraudulently concealed such sale and delivery from him in order to prevent him from interfering therewith and enforcing his said contract.

"9.   That plaintiff says further, that the defendants have often refused and still refuse to perform said contract; that he has often offered to perform said contract and is

now ready, able and willing to do so, and to pay said $120,000, and said $4,200, and any other sum he may be obligated to pay, and to accept said ordinances and the transfer of said stock and property discharged from the debts of said corporation, according to the terms of said contract, and defendants are unwilling and have wholly failed and refused to perform said contract on their part, and have violated said agreement, to his damage in the sum of sixty thousand dollars.

"Wherefore the plaintiff prays judgment against the defendants for the sum of sixty thousand dollars, with interest thereon at the rate of seven per centum per annum from and after December 30, 1901, and costs of suit.

"GEORGE W. BAUMHOFF, Plaintiff.
"By HOWARD & AMES, His Attorneys."

"EXHIBIT A."
"Oklahoma City, Dec. 10th, 1901.

"In consideration of the sum of one dollar received from Geo. W. Baumhoff, we hereby agree to sell to said Geo. W. Baumhoff, his successors or assigns, fifteen hundred shares, constituting all of the shares of the capital stock of the Oklahoma City Electric and Gas and Power Company of Oklahoma City, Oklahoma Territory, of the par value of one hundred dollars each, for the sum of one hundred and twenty thousand dollars, to be paid in cash. This sale to be consummated within ten days after an amendment duly passed by ordinance enacted by the city council of the city of Oklahoma City, O. T., such amendment to said ordinance to be mutually agreed upon between the president and secretary of said company and the purchaser before the same is introduced in the council. The above shares of stock shall convey all the property, rights, privileges, grants and franchises of said Oklahoma City Electric and Gas and Power Company, free of debts of all kinds excepting a sum not exceeding $2,000.00 for eight inch gas pipe now on the grounds

and en route as billed from the Dimmick Pipe Co. of Birmingham, Ala., and our Electric Generator from the Western Electric Supply Co. of St. Louis, at not exceeding $2,200—which the purchaser assumes and is to pay for within ten days after the passage of an ordinance by the city council and approved by the mayor of Oklahoma City, O. T., satisfactory to the purchaser. The sum of one hundred and twenty thousand dollars in cash to be paid by the purchaser within thirty days after such ordinance amending the franchise of said company satisfactory to the purchaser is adopted. The purchaser to take possession of the property at once upon the payment of the entire consideration of the property. It is further agreed that any betterments which may be required, such as lamps, meters or wire bought before Dec. 30th, 1901, shall be paid by the purchaser.

"OKLAHOMA CITY ELECTRIC AND GAS AND POWER CO.

"By G. W. WHEELER, President,

"E. H. COOKE, Secretary,

"E. H. COOKE,

"G. W. WHEELER,

"G. N. BEEBE.

"Accepted

"GEORGE W. BAUMHOFF."

The defendant demurred to the petition as amended, by a general demurrer, charging that the petition as amended did not state facts constituting a cause of action against these defendants or either of them, and on the further ground that the petition is indefinite and uncertain.

The district court, after a hearing upon said demurrer, and upon due consideration thereof, sustained the same; whereupon the plaintiff announced that he would stand upon said amended petition, and now brings the case to this court for review.

The defendant in error in support of the determina-

tion of the court below, presents four propositions for the consideration of the court, each of which raises a question as to the validity of the contract sued on, and are as follows:

First: "That it is not stamped as required by law."

Second: "For want of mutuality."

Third: "That it is void for indefiniteness."

Fourth: "That it is void as against public policy."

These objections will be considered in their order. The allegations of the petition do not charge that the contract sued on was or has been stamped with internal revenue stamps as required by sec. 1 of schedule A of chap. 806, U. S. Statutes at Large of 1901, which provides:

"On all sales or agreements, shares of certificates of stock in any association, company or corporation, whether made upon or shown by the books of the association, company or corporation, or by an assignment in blank, or by delivery, or by any paper or agreement or memorandum, or other evidence of transfer or sale, or to secure the future payment of money, or for the future transfer of any stock, on each one hundred dollars of face value, or fraction thereof, two cents."

Section 13 of the same act provides: "That any instrument required to be stamped and which has not been properly stamped, shall be deemed invalid and of no effect."

Section 14 of the original war revenue act, being chap. 448 of the U. S. Statutes at Large, provides: "That no such instrument shall be admitted in evidence in any court."

The Statutes of Oklahoma, sec. 124 of the code of procedure, provides: That in actions on contracts etc, "a copy thereof must be attached to and filed with the pleading."

Are the revenue stamps required by the act above quoted, any part of the contract required to be shown under the terms of this statute? We think not.

The written contract signed by the parties shows the agreement entered into and is by the statute required to be set out by a copy thereof. If anything further is wanting to its validity, such as revenue stamps, such defect should be taken advantage of by answer or special plea.

The question whether the original instrument was stamped or not is a matter of evidence and not of pleading.

The revenue act referred to is highly penal and provides for the penalty where the omission to properly stamp the instrument is with intent to evade the provisions of the act, and it is further provided in sec. 13 of that act, that an oversight of this kind may be cured by a subsequent compliance with the law. Whether the original instrument, a copy of which is set out, was stamped or not, the fact was not before the court upon demurrer. Nor was the intent of the parties with reference to stamping or not stamping the instrument so pleaded or shown as to enable the court to determine the invalidity of the contract.

We are of the opinion that it was not and is not necessary to a sufficiency of a cause of action upon contract to show or set out the fact of the instrument having been stamped as required by the revenue act referred to.

Cyc. vol. 8, page 142 cites many authorities in support of the proposition and in the text says: "A revenue stamp is no part of a note or bill, and in declaring on such an instrument, it need *not* be alleged that it was properly stamped nor need a copy of the stamp be set out."

There is no difference between a piece of commercial paper and the instrument here sued on, with reference to its validity as a stamped or unstamped instrument. There

is no difference between the act of congress referred to and the act of July, 1866.

Mr. Justice Field of the supreme court of the United States, passing upon a question almost identical with this in 10 Wall. 422, under said act of 1866, where a demurrer had been presented to a declaration upon four promissory notes aggregating $10,805.00 said: "To the objection there are several answers. In the first place, the act of congress which requires promissory notes and other instruments to be stamped, only declares that they 'shall be deemed invalid and of no effect' when the stamp is omitted 'with intent to evade the provisions' of the act—that is, with intent to defraud the government of the stamp duty. It is a fraudulent and *not* an accidental ommission at which the penalty of the statute is leveled. Such fraudulent omission, if available at all to the maker of the note, can only be set up by special plea or urged on the trial. It cannot be taken advantage of on demurrer.

"In the second place, if a stamp were essential to the validity of paper of this kind, the averment in the declaration that the defendants had made and delivered to the plaintiff their promissory notes, would imply that the instruments were at the time in the form and condition required by law."

We are therefore of the opinion that the demurrer of the defendant to the petition of plaintiff, in so far as the same is based upon the absence of proper revenue stamps from the copy of the contract set out in the petition, or any allegations of the same being upon the original contract, is not well taken.

The second contention of plaintiff in error that the

contract sued on is void for want of mutuality, cannot, we think, be sustained upon the authorities.

There may be said to be mutuality of contract where the agreement entered into between the parties is binding alike upon each touching its ultimate performance. Both parties must be bound or neither are bound. Squared by this rule, is the contract under consideration wanting in mutuality? What is to be sold, is by the terms of the agreement is plainly stated. The amount to be paid therefor is equally definite. The time in which the conveyance should be made and the time of payment therefor is also fixed. It is true that the contract provides that the sale is to take place after the passage of an ordinance by the mayor and council of Oklahoma City, satisfactory to the purchaser, which ordinance, at the time of its passage, has been mutually agreed upon by the plaintiff and president and secretary of the defendant corporation; but this condition in the contract does not, we think, render the same void for want of mutuality.

This latter provision attaches to the contract a condition precedent which, if not ultimately consummated, may defeat the sale provided for in the contract; but we do not understand that contracts containing such a condition are for that reason void for want of mutuality. It is a provision mutually agreed to, and affects both parties alike.

The contract may not be capable of enforcement for some other reason, but it cannot be said that it is lacking in mutuality, because it is manifest that both parties are equally and mutually affected by and concerned in this condition, in case the condition happens as contemplated by the contract.

This case is easily distinguished from *American Cotton Oil Co. v. Kirk et al.,* 68 Fed. 791, cited in support of the contention that the contract is void for want of mutuality.

That case was founded upon a contract to sell and deliver 10,000 barrels of oil at a stipulated price, in such quantities per week as the buyer should desire, to be paid for as delivered, but which contained no agreement on the part of the buyer to purchase and receive any particular quantity of oil. This was a one sided contract which compelled the oil company to sell, but left it to the option of Kirk as to whether he would purchase or not.

The same distinguishing feature is found in *M. K. & T. Ry. Co. v. Bagley,* 56 Pac. 759, and *Woolsey et al. v. Ryan,* 54 Pac. 664, also cited in support of said contention.

In each of these cases the contract or agreement sued on is so drawn as to make the same binding only upon one of the parties thereto, and the court holds in each case that the contract will not support a cause of action for want of mutuality. In the case at bar a cause of action under the contract, for its enforcement, is open to either party, because each party according to the terms of it has agreed to perform the conditions and obligations stipulated for. The contract is equally binding upon each party and there is not, therefore, a want of mutuality.

The third ground of objection to the contract sued on is that it is void for indefiniteness.

The contract provides that the sale stipulated for is to be consummated within ten days after an amendment has been duly passed by the mayor and council of Oklahoma City, O. T., amending the franchise of the defendant corporation

satisfactory to the purchaser, which amendment by the terms of the agreement was to be mutually agreed upon between the president and secretary of said company and plaintiff. The contract is not indefinite in its provisions, except as to this condition, and with reference thereto it may be said that the character of the ordinance to be agreed upon is not stated, or what its provisions must be in order to be satisfactory to the plaintiff, and it is urged that the agreement is not a sale, is not a complete contract with these essential and important elements not definitely fixed by its terms.

For the purpose of considering the demurrer here presented, it may be admitted that this is true, and still we are unable to see how the defendants may avail themselves of it.

The demurrer is to the petition, which distinctly avers the fact to be that the ordinances stipulated for in the contract have been by the mayor and council of Oklahoma City passed, and that the same were satisfactory to the plaintiff, and that the plaintiff has tendered a compliance on his part, with the terms and requirements of the contract.

It therefore appears that what was indefinite and uncertain in the condition of the agreement, has been made definite and certain.

The petition charges the existence of a contract, the provisions and conditions of which were at the time of commencing this action, settled and determined; and charges an obligation on the part of the defendant to perform that contract.

These allegations, we think, are sufficient to take the subject-matter beyond the reach of a demurrer upon the ground of indefiniteness.

The fourth and last ground of objection is that it was void as against public policy, and upon this subject it is urged that it is void because of the fact that by its terms, before the appellant is bound or required to do anything towards the purchase of the plant in question, an ordinance must be agreed upon, and its passage secured by the mayor and council of Oklahoma City.

The language of the contract in this respect is as follows:

"This sale is to be consummated within ten days after an amendment is duly passed by ordinance enacted by the city council of the City of Oklahoma City, O. T., such amendment to such ordinance to be mutually agreed upon between the president and secretary of said company and the purchaser, before the same is introduced into the council."

It is plain that by this provision the appellant would not and did not agree to pay $120,000.00 for the plant without the ordinance contemplated in the contract being passed. It is also plain that the appellee did not expect and could not demand such payment except upon the passage of such ordinance. Did this condition of the contract render the same void upon the ground that these provisions of the agreement are against public policy? The contract is made dependent for its enforcement upon legislative action. Such action must be had or the contract becomes binding upon neither party. It is a condition precedent. The contract, however, does not require that either party shall take any particular steps in the matter of securing this legislation other than that the parties shall agree upon the legislation desired, before bills are introduced in the legislative body, by the passage of which the desired result is to be accomplished.

It is not pretended that the result to be accomplished is in any way subversive of sound morals or the public welfare or. that the object to be attained is against public policy, other than that the contract is made to depend for its validity upon the happening of a condition which can only happen by and through legislative action.

Was the contract void at its inception for these reasons?

It cannot be said that the contract here sued on is void because of the fact that it tends to corrupt legislative action, without reading into it more than is there written, for the contract does not stipulate for any act on the part of either party other than a presentation to the city council of a bill (or ordinance) which contained the provisions desired to be enacted into a law.

The supreme court of the United States in *Marshal v. B. & O. R. R.,* 57 U. S. 314 said: "All persons whose interest may in any way be affected by any public or private act of a legislature have an undoubted right to urge their claims and argument, either in person or by counsel professing to act for them before legislative committees, as well as in courts of justice."

Can it be rightfully said that because the validity of this contract depended upon legislative action that there was in it therefore an inducement to corrupt the city council by improper means, and it is therefore void? We think not.

If such a rule could be applied in this instance, then improper motives could be charged to every application for a franchise right. The plaintiff has not here imposed upon the defendant a requirement to do any thing of the kind. He has simply said, I will take your property at a given price

if your franchises are amended in a manner to be agreed upon. Such a contract of purchase and sale does not contain the elements which the courts have held to be illegitimate, because subversive of sound morals. To be so subversive requires something more than such an agreement. As said in *Houlton v. Nichol,* 33 L. R. A. 169:

"It is sometimes lost sight of that the presumptions in human affairs are in favor of innocence rather than of guilt, and that such rule applies in testing such a contract as the one we have here by the principles of sound morals," citing several cases.

And further on in the same case in commenting on the case of *Burke v. Child,* 88 U. S. 441, the court says: "The court held the contract void, and there clearly pointed out the distinction between agreements for services that may, and such as may not, properly be entered into to obtain legislative or executive action, and, in effect, said that the preparation of petitions, taking of testimony, collecting of facts, preparing of arguments, and submitting them, orally or in writing, to committees or other proper authority, and services of like character, which are intended to reach only the reason of those to be influenced are legitimate. They are not to be classed with contracts for personal solicitation, or the means customarily resorted to by the lobbyist. It is upon the latter that the law puts the seal of condemnation; not upon the former."

This proposition of the defendants to sell their plant with franchises amended so as to satisfy the plaintiff as a purchaser, the amendments being a condition precedent to the plaintiff's liability in accepting the defendant's proposition, was a legitimate subject of contract and agreement and

Baumhoff v. Oklahoma City Electric, Gas and Power Co. et al.

does not, on the face of it, import corrupt or illegal action by either party. From the conclusions here reached it was error for the district court to sustain the demurrer to plaintiff's petition.

The judgment of the court must therefore be reversed, and the cause remanded with directions to overrule the demurrer, and for such further proceedings therein as the parties may desire to take.

Burwell, J., who presided in the court below, not sitting; Burford, C. J., absent; all the other Justices concurring.