### FREEMAN v. KING et al.

No. 13265—Opinion Filed May 26, 1925.

Rehearing Denied July 14, 1925.

1. **Pleading — Insufficiency of Answer and Requested Amendments—Objection to Introduction of Evidence—Disallowance of Amendments not Erroneous.**

Where the sufficiency of an answer is challenged by the objection to the introduction of any evidence thereunder, and after the court has examined the answer and announced its intention to sustain the same, and the defendant then offers to amend his answer and sets out the amendment he desires to make, and the court holds that his offered amendment would not materially change his answer and cross-petition, as he had therein substantially alleged what he desired to insert as amendments, and the defendant then tenders the evidence he expects to offer in support of his answer and cross-petition which is objected to by the plaintiff, and the court sustains the objection on the ground that the evidence offered would not constitute a defense to plaintiff's cause of action, held, it was not error for the court to sustain the objection to the offer of testimony and render judgment for the plaintiff.

2. **Specific Performance—Vendee in Possession—Forfeiture of Rights Through Laches.**

A party to an agreement for the purchase of lands, after obtaining possession, cannot lie idly by for more than three years, take no steps in the matter of purchase, until sued for the possession, and then defend by a cross-action for specific performance. A party is not entitled under such circumstances, to have the agreement for the purchase of the lands executed by a court of equity.

3. **Same.**

In this case, we hold the defendant, Freeman, was guilty of such laches as will bar his right to specific performance.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Garvin County; C. C. Smith, Assigned Judge.

Action in ejectment by S. H. King et al. against W. M. Freeman to recover possession of certain real estate. There was judgment for plaintiff and defendant appeals. Affirmed.

Bowling & Farmer, for plaintiff in error.

Blanton, Osborn & Curtis, for defendants in error.

Opinion by MAXEY, C. This suit was instituted in the district court of Garvin county, Okla. on the 27th day of May, 1920, by the plaintiffs, S. H. King et al., defendants in error, against the defendant, W. M. Freeman, plaintiff in error, for the possession of certain lands and damages for the rental value of said land for the years 1917, 1918 and 1919. The land in controversy was the allotment of Jess Collins, a Chickasaw Indian, whose restrictions on alienation were removed by the Secretary of the Interior, and he was permitted to alienate the land in controversy on the 21st day of June, 1916, and Jess Collins and his wife, Martha Collins, conveyed said lands to Elmer McElhose by warranty deed. At the time McElhose bought the land from Collins, the defendant, W. M. Freeman, was occupying the land under a lease from Collins, which did not expire until the 1st day of January, 1917 and he was permitted to occupy said lands under a lease until his lease expired. McElhose, at the time he purchased the land, lived in New Jersey, but expected to return to Oklahoma soon afterwards. He made no arrangements with Freeman to occupy the land and Freeman continued to occupy and cultivate the land, and on February 25, 1920, McElhose, joined by his wife, conveyed said lands by warranty deed to William Kremer, and on March 2, 1920, said Kremer and wife conveyed said lands by warranty deed to S. H. King, the plaintiff herein. At the time McElhose bought the land from Collins through the Secretary of the Interior, he made a cash payment and he gave his notes and mortgage to secure the deferred payments, and when Kremer bought it on February 25, 1920, he made a cash payment to McElhose and assumed the payment of the notes secured by mortgage on the land and when Kremer sold to King, the plaintiff, on March 2, 1920, King paid him a certain cash payment and assumed the mortgage and the payment of the taxes. King paid off the notes and the mortgage, and paid up the taxes for the years 1917, 1918 and 1919, making in all about $4,000 that King paid for the land. At the time King bought the land,

A. R: Crosby was occupying it and King went to Crosby and learned from him that he was occupying it under a lease from Freeman, and he then went to Freeman and Freeman told him that he contracted with McElhose to purchase the land shortly after McElhose bought it. That their contract consisted of letters and telegrams, and that he had always been ready, willing and able to carry out his contract, but he could not get in touch with McElhose, and for that reason had never consummated the deal. King brought this suit and Freeman set up his alleged contract with McElhose as a defense. In his answer he alleged that after McElhose bought it, he entered into a contract with McElhose, whereby he agreed to buy the land from McElhose, and McElhose agreed to accept his offer for the land. He states in his answer that on or about the —— day of ——, 1916, while he was still in possession, he entered into a contract in writing which was in the form of letters and telegrams, whereby and under the terms of which the said McElhose agreed to sell to the defendant the land involved in this action, by the terms of which he agreed to pay to McElhose the sum of $——, and assume the payment of a mortgage of $——; and that the letters and telegrams constituting said contract of sale had been lost or destroyed and could not be produced. He also alleged in his cross-petition, where he was asking specific performance of said contract, that he bought the land from McElhose on the —— day of ——, 1916, and agreed to pay the sum of $—— cash and assume a mortgage on the premises for $——, and the only reason he had not carried out the contract was that he was unable to locate McElhose.

The evidence shows that McElhose moved from New Jersey to Oklahoma City in 1917, and had made his home in Oklahoma ever since; that he was sometimes in Tulsa, sometimes in McAlester, but most of the time in Oklahoma City. The evidence further shows that the land in controversy was sold for taxes of 1917, and that Freeman bought a tax certificate to the land for the taxes of 1917. The evidence further shows that Freeman never paid any taxes and never paid any rent to McElhose or any of his grantees, but remained on the place and collected the rent for three years. McElhose denied the alleged contract in toto. The question of the value of the rents was submitted to the jury, and after testimony of both parties had been introduced, the jury found that the rental for the three years amounted to $1,500, and judgment for possession and for the rental value was entered against Freeman, and it is from that judgment that he appeals.

On the trial of the case, after the plaintiff had introduced his testimony, the defendant offered to introduce testimony in support of his answer and cross-complaint. Counsel for plaintiff objected to the introduction of any testimony by the defendant on the ground that his answer and cross-petition did not state a defense to plaintiff's cause of action. This objection was sustained by the court. The defendant asked leave to amend his answer and cross-complaint, and stated in what respect he desired to amend, and he said he desired to insert that the contract was entered into on the 10th day of December, 1916. The court remarked that he had that substantially in his answer and cross-petition and inserting that date would not help the answer and cross-petition any, and overruled his request to amend. He then stated what he expected to prove by himself and a witness by the name of Fields. The court held that the tender of testimony would not be sufficient to sustain his cross-petition for specific performance nor sustain his answer. He stated that he would testify that he was to pay McElhose $650 and assume the mortgage on the land to the Indian, Jess Collins, and that McElhose agreed to accept that. He expected to prove by Fields, who was probate attorney during the years 1918 and 1919, that he had investigated the matters of this land and found that McElhose had offered to sell to the defendant Freeman, and that Freeman had a letter from McElhose, accepting the defendant Freeman's proposition to buy said land. This was all objected to and the court sustained the objection. The doctrine of laches is invoked and we think it well taken.

Nothing was done by either party after the alleged contract was made, and we think the evidence fairly shows an actual abandonment of the contract by both parties and a restoration of the property to the vendor. Notwithstanding the alleged purchaser's possession of the land, it was the duty of the parties to assert and insist on the performance of the contract of purchase, within a reasonable time, especially when the defendant saw by McElhose's continued absence that he was treating the sale as having been rescinded. Specific performance is a relief which the courts will not give, unless in a case where the parties seeking it act as promptly as the nature of the case will permit. Hargis v. Ederington (Ark.) 168 S. W. 1095; Uzzell v. Gates, 103 Ark. 191; Parks v. Monroe (Kan.)

161 Pac. 638. The court said in the latter case:

"When a contract is repudiated by one of the parties thereto. the other party has a right to take such steps as he may deem necessary to protect himself against loss or damage because of such repudiation. The law imposes on him the duty of acting promptly, and if he does not so act, he can neither have specific performance nor collect damages, but will be held to have acquiesced in the repudiation of the contract. Fowler v. Marshall, 29 Kan. 665; 36 Cyc. 728. When defendant Monroe repudiated his contract with plaintiff Parks, the latter had a right immediately to commence an action to compel specific performance of the contract, or, in the event that specific performance could not be had, to recover the damages sustained by reason of such repudiation."

Defendant claims that after the terms of sale were agreed on by correspondence, he prepared a deed and sent it to McElhose, but McElhose never executed it, and never returned it to him. In Marsh v. Lott (Cal.) 105 Pac. 968, the court said:

"For more than three years the plaintiff, so far as appearances went, quietly acquiesced in and assented to defendant's express refusal to consider the option as in any way binding. In his work on Specific Performance of Contracts, Mr. Pomeroy says:

" 'Where one party, even without any just or sufficient reason for so doing and as a mere act of arbitrary will, notifies the other that he shall not perform the contract— shall treat it as at an end- -acquiescence by the party notified will cut off the latter's right of enforcement, and this acquiescence will be sufficiently shown by a delay in commencing a suit which would otherwise be too short to prejudice his r ghts.' "

In Gentry v. Rogers, 40 Ala. 442, it is said:

"During this period of more than three years, the plaintiff has been in no way obligated to make this purchase. In view of the great increase in the value of this property, it would be manifestly unfair and inequitable to allow him at this late day, after such acquiescence, to insist that the alleged option agreement shall now be enforced."

In O'Donnell v. Jackson (Cal.) 11 Pac. 251, the first paragraph of the syllabus is as follows:

"A party to an agreement for the purchase of lands, after obtaining possession. cannot lie by for more than three years, take no steps in the matter of purchase. until sued for the possession, and then defend by a cross-action for a specific performance. A party is not entitled, under such circumstances, to have the agreement for the purchase of the lands executed by a court of equity."

It was something over three years after Freeman alleges he made the contract with McElhose, and during all of that time Freeman made no effort to enforce specific performance. The claim on his part, that he was unable to locate McElhose, is too flimsy for consideration. Other persons were able to locate him and the evidence shows that he moved to Oklahoma City in 1917 . and had continued to live there up to the commencement of this suit. This was less than 100 miles from where Freeman lived and direct railroad connection. Another thing that impresses us with the idea that Freeman treated the contract as abandoned is the purchasing of a tax certificate for the taxes of 1917. He was occupying the land at the time McElhose bought it as a tenant of Jess Collins, from whom McElhose bought it, and his lease expired the 1st of January, 1917, and he continued to occupy the land up to the commencement of this suit, when a receiver was appointed to take charge of it and collect the rents. In the meantime Freeman paid no taxes, nor paid anything on the mortgage that he claims he was to assume. In fact, he did nothing that he was to do according to the alleged contract that he pleads. We are clearly of the opinion that Freeman was guilty of such laches as will bar his right to enforce specific performance. After a thorough examination of the record and of the testimony that was read into the record at the time the objection to the introduction of any testimony was made, as to what Freeman expected to prove, we are satisfied that he could not prove facts sufficient to entitle him to a specific performance of his alleged contract. That being so, what was the use of the court permitting defendant to introduce testimony which in its judgment could not change his pleadings? The alleged contract in the answer and the tender of testimony to support same, in our judgment. is wholly insufficient, and to reverse the case and send it back for another trial would be an injustice to the plaintiff in this case and cause him to incur a lot of additional expense. We, therefore, recommend that the judgment of the trial court be in all things affirmed.

By the Court: It is so ordered.

Note.—See under (1) 31 Cyc. p. 759; (2) 36 Cyc. p. 732; (3) 36 Cyc. p. 732.