## MILLER et al. v. ROBERTS.

No. 19254.  Opinion Filed Oct. 22, 1929.
Rehearing Denied Dec. 17, 1929.

Sigler & Jackson and R. A. Howard, for plaintiffs in error.

H. A. Hicks and Brown & Williams, for defendant in error.

FOSTER, C.  This is an appeal from the district court of Carter county.  Plaintiff, Anna Roberts, brought an action for specific performance of a certain oral contract for the sale of real estate against the defendants Jacob M. Miller and Carrie H. Miller. The judgment of the trial court was in favor of the plaintiff, Anna Roberts, and the defendants prosecute this appeal.  The parties will be referred to as they appeared in the trial court.

The first petition filed by the plaintiff,

Anna Roberts, alleged that sometime in the year 1912, the defendant Jacob Miller, and her husband, W. L. Roberts, entered into an oral contract by the terms of which the said Jacob Miller was to buy 240 acres of land, which was then unallotted, in Carter county, and that the said W. L. Roberts was to go upon the land, build improvements, consisting of houses, barns and other structures, to fence the land, clear and cultivate it, and that, in consideration thereof, the defendant Jacob Miller was to deed to the said W. L. Roberts a one-half interest therein; that pursuant to the said contract, the defendant Jacob Miller did buy the property, and that W. L. Roberts, the plaintiff's husband, and this plaintiff, together with their family, consisting of some ten children, moved upon the farm and performed the terms and conditions of the oral contract by making all the improvements, which were accepted by the defendant Jacob Miller, but that he had refused to execute the deed as agreed; that in the year 1925, the plaintiff secured a divorce from her husband, W. L. Roberts, by the terms of which divorce decree, in addition to dissolving the marriage relation, it was adjudged that this plaintiff should have a one-half interest in all the property owned by the said W. L. Roberts, and that by reason thereof this plaintiff was entitled to a one-fourth interest in the real estate above mentioned.

After a demurrer and other pleadings were filed to this petition, the plaintiff apparently discharged her attorney, and other attorneys were employed and several amendments were made to the petition, the final amended petition upon which this case was tried alleging that the original contract made in 1912 was between Miller as one party and this plaintiff and her husband, W. L. Roberts, as the other, the other allegations being in substance as alleged in the original petition, but the amended petition showing that it was based upon a different theory than was the original petition.

At the trial the evidence on behalf of the plaintiff disclosed that prior to the government sale of the unallotted lands, which consisted of 240 acres, the defendant Jacob Miller had made an oral contract with the plaintiff and her husband, W. L. Roberts, by the terms of which he was to buy the 240 acres, and this plaintiff and her husband were to move upon the property, build the houses, fence, clear and cultivate the land, and to place other improvements thereon, and in consideration thereof the defendant Jacob

Miller was to deed to the plaintiff and her husband a one-half interest therein.

The testimony of several witnesses showed that W. L. Roberts and this plaintiff and their children did perform the work and labor in constructing the improvements, clearing the land, building the fences, and reducing the land to cultivation, and there is considerable testimony showing that during the period from 1913 to 1924, part of the rents were given to the defendant Jacob Miller, amounting to about one-eighth of the crop raised.

The patent to the land from the United States government was given to the defendant Jacob Miller, in the year 1920, and plaintiff testifies that, upon several occasions thereafter, he admitted to her that this plaintiff and her husband, W. L. Roberts, were entitled to the deed for a one-half interest, and upon at least one occasion said that W. L. Roberts and himself would get together sometime in the future, and he would issue the deed.

After the separation of this plaintiff and her husband, W. L. Roberts, she testifies that the defendant again acknowledged the interest of plaintiff and Roberts in the property, but that later, and about the year 1921, he refused to issue her said deed, and has continuously since that time refused to issue the same; that she brought this action in 1925.

The testimony on behalf of the defendant denies any such agreement, and shows that he purchased the land in 1912 from the United States government with an agreement that W. L. Roberts should go upon the property and should have free rent for a period of five years if he would make certain improvements thereon, the improvements being, in substance, those alleged in plaintiff's petition and proven by plaintiff's testimony; and that after the improvements were made and the five-year period had expired, W. L. Roberts paid him a small amount of rent for the property, but that there was never any agreement or understanding of any kind, nature, or description, that W. L. Roberts, or this plaintiff, should have any interest in the property. The testimony shows that the defendant paid the taxes during all this period of years, but there is some testimony that W. L. Roberts, husband of the plaintiff, paid part of the insurance on the house which was built upon the premises. There is also some testimony that a certain sum was collected for water used from these premises which was divided

between the defendant and W. L. Roberts. The testimony of W. L. Roberts was almost the same as Miller's, and corroborated the defendant in all material things.

The petition also alleged a sale of an oil and gas lease by the defendants for the sum of $19,000, and asked for an accounting of the money received, but the lower court found against the plaintiff upon this allegation, in consideration of the proof thereon, and this action on the part of the court is not appealed from.

It appears also from the testimony that a deed was given by the defendant Jacobs Miller to his wife, Carrie H. Miller, but the court found that this was given without consideration and with a full knowledge of all the facts, and no question is presented in this appeal concerning the finding of the court on this proposition.

Certain questions were submitted to a jury in the case, but it is agreed that the same is an equity case and that the finding of the jury was only advisory. The court, however, adopted the jury's finding, but the only question submitted to the jury was whether or not a contract as alleged was made between this plaintiff and her husband, on the one part, and the defendant Jacob Miller, on the other.

The court entered a judgment in favor of the plaintiff, Anna Roberts, decreeing her specific performance of the contract and adjudging that she had a one-fourth interest in the 240 acres, and directing the defendant Jacob Miller to execute and deliver to her a deed for an undivided one-fourth interest therein.

The first proposition presented by the defendant is that the plaintiff has made an election of remedies by filing her first petition, and is estopped to make the claim set up in the amended petition. The first petition alleged that she was entitled to a one-fourth interest in the land because of a contract between Miller and her husband, W. L. Roberts, and that she later obtained a divorce decree giving her a one-half interest in her husband's estate, thereby giving her a one-fourth interest in the property.

Plaintiffs in error argue that she is now estopped from contending in her amended petition that her interest in the land came by virtue of a contract direct with Miller. To support this proposition the plaintiffs in error cite 20 C. J. 29, in which it is held that, while the decisions are not in harmony as to the effect of commencing an action to enforce one of two or more remedial rights arising out of the same state of facts, in the absence of mistake or some other legal excuse, the commencement of a proceeding to enforce one remedial right is such a decisive act as to constitute a conclusive election, barring all subsequent prosecutions of inconsistent rights. This general proposition does not seem to be universally followed. But, assuming this to be the law, still, we think the same constitutes no defense in the case at bar.

An election of remedies is an affirmative defense and must be pleaded in order to make it available. 20 C. J. 37. If an election is not pleaded and not enough appears to show that if it had been it could have been proven, it constitutes no defense. World's Fair Mining Co. v. Powers, 224 U. S. 173, 58 L. Ed. 717.

In the case at bar, the defendant did not plead an election of remedies. However, had he so pleaded, there is still another reason why this defense would not be effective. It must be shown that there has been a choice between two or more remedies actually existing at the time of the election in order for an election of remedies to constitute a defense. 20 C. J. 21. In the case of Tulsa Rig, Reel & Mfg. Co. v. Arnold, 94 Okla. 120, 221 Pac. 19, it is held that the doctrine of election of remedies applies only where there are two or more remedies actually existing at the time the election is made. In the case at bar there is no showing that the plaintiff had a cause of action as alleged by her first petition, and therefore there is no showing in this case that there actually existed two or more remedies. We find no merit in the first contention of the plaintiff in error.

The second proposition argued by defendant is that the contract is too indefinite and uncertain for a court of equity to enforce the same. The petition alleges that the oral contract between the parties provided that Miller should buy the land and pay for the material necessary to construct the improvements, and that the plaintiff and her husband were to perform all the work in making the improvements; to build fences, clear and cultivate the land, to build houses, barns and other out-houses thereon, plant an orchard, and to do other things for the improvement of said land.

It is the contention that the contract did not state the kind or character of houses to be placed thereon, nor the nature of the improvements to be made, and there is no allegation or proof as to the kind of improvements to be made, nor is there any

allegation or proof that the revenue on the land was thereby increased, and for these reasons the contract is too indefinite and uncertain to be enforced by a court of equity.

In support of this contention, the plaintiff in error relies upon many authorities to the effect that the contract itself must be clear, certain and unambiguous in its terms, and must be either admitted by the pleadings, or proved with a reasonable degree of certainty to the satisfaction of the court. These authorities also hold to the well-established rule that the specific performance of a parol contract for the conveyance of land cannot be claimed as a matter of right by either party, but it is a question of equity addressed to the sound legal discretion of the trial court after a consideration of all the circumstances surrounding each particular case.

It seems to be well settled that specific performance of a contract cannot be enforced when any material part of its terms or conditions are uncertain. Strack v. Roetzel, 46 Okla. 695, 148 Pac. 1017; Webster v. Neal, 119 Okla. 93, 248 Pac. 596, and other cases.

Defendant contends that even if the plaintiff shows by her testimony that certain improvements were made, there is no showing in the pleadings or proof that these improvements were agreed by the parties to be made. However, the petition does allege that all the requirements of the contract were performed as agreed to, and that the same had been accepted, ratified, and approved by the defendant John Miller, and there is sufficient testimony in the record reasonably tending to support said allegation. We think this sufficient.

The provisions of a contract which by the allegations of the petition and the proof are shown to be indefinite and uncertain, if it also appears that said provisions have been performed by the plaintiff to defendant's satisfaction, then the condition in the contract which was indefinite and uncertain, upon the performance of the same to the satisfaction of both parties, becomes a definite and certain provision. Baumhoff v. Oklahoma City E. G. & P. Co., 14 Okla. 127, 77 Pac. 40; Pomeroy on Equity Jurisdiction (2nd Ed.) section 2193.

Assuming that the provisions of the contract in the case at bar were indefinite and uncertain at the time the contract was made, we think that there is sufficient evidence to show that the contract had been fully performed by the plaintiff to Miller's satisfaction, and the uncertain provisions of said contract now become certain.

The next proposition contended for by the defendant is that the contract was void under the statute of frauds. The defendant cites section 5034, C. O. S. 1921, which provides, among other things, that contracts for the sale of real property must be in writing.

Under this proposition defendant contends that it is the claim of the plaintiff that she and her husband paid for the one-half interest by performing certain work and labor on the premises, and that the plaintiff does not contend that in addition to paying for the property she or her husband placed any improvements thereon in addition to those which actually paid for the property, and, further, that while plaintiff had possession of the property, her possession was not exclusive, but was a joint possession with that of Miller and not such as would take the case out of the statute of frauds.

To support this proposition, the defendant first contends that purchase money may be either property, services or money, and is not limited to money alone (Bahsen v. Walker, 89 Okla. 143, 214 Pac. 732); that the payment of the purchase price in full is not an act that will take an oral contract for the sale of real estate out of the operation of the statute of frauds. Pomeroy on Specific Performance, section 112; Edwards v. Estelle, 48 Cal. 194.

The last case cited, defendant says, is directly in point. But in that case all the purchase price was paid by the plaintiff in performing services as a surveyor. No possession of the real estate was delivered, nor were any improvements made upon the property. In the case at bar, the full purchase price was paid by the construction of permanent and lasting improvements upon the premises, and possession was delivered. But, as defendant contends, there is no evidence to show that any improvements were made in addition to those agreed upon as the purchase price for the interest in the land.

In the case of Harris v. Arthur, 36 Okla. 33, 127 Pac. 695, the fourth paragraph of the syllabus is as follows:

"Acts done under a parol contract for the sale of an interest in land most frequently held as such part performance as to take the same out of the statute of frauds, are: (a) The delivery of possession to, or the assumption of exclusive and notorious possession by, the vendee under the verbal contract of sale, and with the knowledge of the vendor, accompanied by part payment of the consideration; (b) or the expenditure of money by the vendee in making improvements, permanently beneficial to the estate,

with the knowledge of the vendor, and in pursuance of such parol agreement of sale; (c) or where the parties have so acted under the parol agreement as to alter their position so that a restoration to the former position is impractical or impossible; (d) or where the parties have so acted under the agreement that to allow the defendant to take shelter under the statute, would be to inflict an unjust and unconscientious injury or loss upon the other party."

It has been held many times in this state that an oral contract for the conveyance of real estate will be enforced by a decree for specific performance where a part of the purchase price has been paid, and where the vendee has gone into possession with the consent of the vendor and made lasting and valuable improvements thereon, thereby rendering a return of the original position of the parties unjust and impractical. Fulp v. Sill Mfg. Co., 101 Okla. 226, 224 Pac. 694; Halsell v. Renfrow, 14 Okla. 674, 78 Pac. 118; Levy v. Yarbrough, 41 Okla. 16, 136 Pac. 1120; Fulkerson v. Mara, 68 Okla. 272, 173 Pac. 811; Boese v. Childress, 83 Okla. 60, 200 Pac. 997.

In the case of Harris v. Arthur, supra, certain general rules are promulgated as to what acts are necessary to take an oral contract for the sale of real estate out of the operation of the statute of frauds. The facts in the case at bar seem to come almost literally under the first proposition as set out in the syllabus of the case above quoted. It appears that payment of the purchase price and possession must also be accompanied by the making of permanent improvements. But we think, from a careful examination of many cases from our court, that where the permanent improvements also constitute the purchase price, and in addition thereto the vendee has had possession of the property for nine or ten years, with the consent of the vendor, this is sufficient to take the oral contract out of the operation of the statute of frauds.

Defendant, however, contends that, under the allegations of the petition, the amount of damage due the plaintiff for the work and labor in the construction of the improvements could be easily ascertained, and therefore a court of equity will not enforce the contract.

Owing to the fact, however, that plaintiffs had lived upon the land for some ten or twelve years, and had improved it pursuant to the contract, and had, according to plaintiffs' testimony, paid all of the purchase price as agreed to, we believe that it would be unjust and impractical to arrive at the correct amount of damages.

Defendant also contends that the possession mentioned in the authorities above referred to means a definite and exclusive possession, and that any possession concurrent with the vendor is not sufficient. Pomeroy on Specific Performance of Contracts (3rd Ed.) section 121.

But the text here relied upon, as well as the cases cited in support thereof, refers to circumstances where the actual possession of the land was jointly held between the vendor and vendee. Here there seems to be no dispute but what the plaintiff had actual possession of the undivided one-half interest for which she is contending, and had occupied the premises for a number of years. We think this sufficient to take the case out of the statute of frauds.

The defendant next contends that the petition shows upon its face, and the proof also shows, that the plaintiff's claim was barred by laches. In support of this contention, the defendant cites Freeman v. King, 111 Okla. 27, 238 Pac. 850, where a defendant had possession of land for more than three years under an oral agreement to purchase same, but did not attempt in any way to exercise his right. Upon suit being brought for possession, the defendant pleaded his contract and asked for specific performance, which was denied, the court holding that the defendant was barred by laches. This is very different from the case at bar. Here the plaintiff, who was in possession of the land, had not only shown a willingness to perform her contract, but had performed every act necessary for her to receive her deed. It is true that Miller received his patent to the land in 1920, and this suit was not brought until in 1925. Just when the improvements required of plaintiff were completed does not appear. Plaintiff received a divorce in 1923. The matter was discussed with defendant several times, and he indicated his willingness to execute a deed. He never refused to execute a deed to this plaintiff until in 1924. It was not until about 1924 that plaintiff learned that her husband was not claiming any interest. There is also some evidence to show that her husband and Miller had conspired to defeat her claim.

Where laches are relied upon as a defense for specific performance, it must appear from the evidence that there was actual fraud on the part of the plaintiff, as well as delay, by which the defendant was misled to his injury, or resulting in conditions and circumstances such as would make it inequita-

ble to decree specific performance; otherwise, a court of equity will adopt the period of the statute of limitations. Ware v. Hall, 116 Okla. 70, 243 Pac. 740. Under the circumstances in this case, we do not believe the plaintiff was barred by laches.

It is next contended that the judgment in this case is against the clear weight of the evidence. Under this proposition the defendant argues that the testimony shows that this contract was made with W. L. Roberts, husband of the plaintiff, and that the plaintiff was not a party to the contract, and therefore could not recover. In support of this proposition, the defendant relies upon the testimony of the plaintiff, where she testifies in substance that she did certain work upon the land in question, which, as defendant contends, amounted to the ordinary duties of a housewife, and that, in the ordinary affairs of life, the husband is entitled to the services of his wife so far as ordinary duties are concerned. While recognizing the general rule that a wife may contract independent of her husband, still, the testimony must show that she clearly intended to do so.

From a careful examination of the record, we believe there was sufficient evidence to sustain the judgment of the court that the plaintiff in this case was a party to the contract and that she performed her part of the contract.

It is true that the testimony is very conflicting and much of it disputed, plaintiff testifying to one state of facts and the defendant testifying to another. But, after a careful consideration of the entire record, we do not believe this court can say that the judgment is against the clear weight of the evidence.

It is next contended by the defendant that the court erred in admitting testimony in reference to work done upon the property by the children of W. L. Roberts and his wife. This objection is made on the theory that the husband is entitled to the earnings of the minor children, and therefore the testimony is incompetent to support the plaintiff's contention; that, if the work was done according to the contract, it made no difference who did it, and, therefore, the testimony is immaterial. But if the plaintiff is trying to show that the children had performed the work, and that by reason thereof

she would have an interest in the land, it was inadmissible. In support thereof, he cites Sweet v. Crane, 39 Okla. 248, 134 Pac. 1112, which holds that a father is entitled to the custody, services, and earnings of the minor children.

We believe that the only material effect of this testimony was to show that the work was done, and was, in effect, to corroborate testimony of the plaintiff and to show that the terms of the contra t had be:n er-formed. For this reason we do not think it was error to admit the same.

The last contention of defendant is that the court erred in refusing to give certain instructions requested by the defendant. It is admitted by the defendant that this being an equity case, the verdict of the juiy is purely advisory, but it is contended that the court by refusing these instructions indicated that he decided the case on the wrong theory.

With this contention we cannot agree. This court has in cases too numerous to mention decided that "where findings of fact are made by the court, the court's instructions to the jury are wholly immaterial, and error cannot be predicated thereon."

We do not think that the refusal to give the instructions indicates that the court decided this case on the wrong theory. The trial court made findings of fact which we think are supported by the evidence.

From an examination of the entire record, we cannot say that the judgment and finding of the trial court is against the clear weight of the evidence.

The judgment is therefore sustained.

BENNETT, TEEHEE, LEACH, and REID, Commissioners, concur.

By the Court: It is so ordered.