## DANCIGER OIL & REFINING CO. et al. v. BURROUGHS.*

### No. 1054.

Circuit Court of Appeals, Tenth Circuit.

Feb. 19, 1935.

*Rehearing denied March 25, 1935.

LEWIS, Circuit Judge, dissenting.

———◆———

Thomas H. Owen, of Oklahoma City, Okl. (Scott P. Squyres and Owen & Lindsey, all of Oklahoma City, Okl., and W. C. Hock, of Ft. Worth, Tex., on the brief), for appellants.

Wm. L. McCann, of Oklahoma City, Okl., for appellee.

Before LEWIS, McDERMOTT, and BRATTON, Circuit Judges.

## BRATTON, Circuit Judge.

The major question which the appeal in this suit for specific performance brings here for decision is whether a contract resting in parol in which it was mutually agreed that the owner of eight lots in a block consisting of thirty-two lots should execute and deliver an oil and gas lease upon his own property and secure similar leases from the respective owners of the remaining lots for a cash compensation of $500 and an overriding royalty of one-sixteenth of the oil, gas, and casing-head gas produced upon the entire block, was removed from the statute of frauds by complete performance on the part of the owner of the eight lots. For convenience the parties will be referred to as they appeared in the trial court.

Plaintiff alleged that block 31 in Schilling addition to Oklahoma City consisted of thirty-two lots; that he owned eight of them, including two small ones only ninety feet in length; that defendant Danciger Oil & Refining Company desired to secure leases in that vicinity; that R. J. Reinke was its agent in charge of its office at Oklahoma City; that plaintiff and defendant Danciger Oil & Refining Company, acting through Reinke, entered into a parol agreement in which it was mutually agreed that plaintiff should execute a lease upon his property; that he should secure similar leases from the respective owners of the remaining lots in the block and thus deliver to defendant a community lease upon the entire block; that such defendant would pay the owners a cash bonus of $400 per lot for such leases; that it would pay plaintiff a cash consideration of $500 and convey a one-sixteenth overriding royalty to him; that he completely performed the agreement on his part; that defendant Danciger Oil & Refining Company accepted the lease and subsequently assigned it to defendant Danciger Royalty Company; that at the time of the assignment the latter company had notice of the agreement; that a well of 50,000 barrels per day was drilled and large quantities of oil extracted from the premises; that he had received virtually all of the cash compensation, but that defendants had failed and refused to convey the overriding royalty to him in accordance with the terms of the contract. Specific performance by conveyance of the specified royalty, an accounting for his share of the oil, gas, and casing-head gas extracted from the premises, and judgment for the balance due on the cash consideration were prayed.

Defendants admitted by answer that plaintiff was requested to secure the leases and that he did so; that they were accepted and placed of record; asserted that he was to be paid a reasonable compensation for that service; denied an agreement to convey an overriding royalty to him; pleaded that Reinke lacked authority to make an agreement for such a royalty; and averred specifically that the contract upon which plaintiff seeks to recover is void because it is within the statute of frauds.

The court found that it was mutually provided in the parol contract that plaintiff

should receive the overriding royalty; that Reinke had authority to make such an agreement; that plaintiff had completely performed his part of it; and that defendant Danciger Royalty Company is owned by defendant Danciger Oil & Refining Company. Concluding that such performance took the contract without the statute, a decree of specific performance was entered.

■ Section 9455, O. S. 1931, provides that every agreement for the sale of real property or an interest therein shall be invalid unless it, or some note or memorandum thereof, shall be in writing and subscribed by the party charged. It is settled law in Oklahoma that an oil and gas lease conveys an interest in real estate, and therefore comes within the statute. King v. Gants, 77 Okl. 105, 186 P. 960; Hall v. Haer, 160 Okl. 118, 16 P.(2d) 83. That construction of the statute by the highest court of the state is binding here. Crain v. Pure Oil Co. (C. C. A.) 25 F.(2d) 824; Owens v. Dancy (C. C. A.) 36 F.(2d) 882; Balanced Rock Scenic Attractions v. Manitou (C. C. A.) 38 F.(2d) 28; Clarke v. Boysen (C. C. A.) 39 F.(2d) 800; Jackson v. Harris (C. C. A.) 43 F.(2d) 513; Oklahoma Gas & Electric Co. v. Wilson & Co. (C. C. A.) 54 F.(2d) 596; Terry v. Midwest Refining Co. (C. C. A.) 64 F.(2d) 428; Ætna Life Ins. Co. v. Wertheimer (C. C. A.) 64 F.(2d) 438; Bivins v. Board of Com'rs (C. C. A.) 66 F.(2d) 351. The contract, being for the conveyance of an interest in land, is invalid unless taken without the statute by complete performance on plaintiff's part.

■ Both parties approach the contracts as one exclusively for services on plaintiff's part, and argue the case upon that assumption. Plaintiff relies upon King v. Gants, supra, and the trial court apparently predicated its decision upon that case. Defendants concede that the principle decided in that case applies here, but insist that the case was overruled by Hall v. Haer, supra, and urge that we must follow the last expression from the Supreme Court of the state. It is unnecessary to consider whether there is a conflict between the two cases, and, if so, which applies here, because we do not share the view that the contract now under consideration was one exclusively for services on plaintiff's part. It overlooks an important fact. The contract consisted of two integral parts on each side. In addition to the services rendered in securing leases from other owners, plaintiff was required to execute a lease upon his own property constituting virtually one-fourth of the entire area. Under the authorities previously cited, that lease constituted a conveyance of an interest in real estate. In addition to paying the $500 in cash, defendant Danciger Oil & Refining Company was required to convey to plaintiff an overriding royalty. That constituted a conveyance of an interest in land because it is the general rule that an assignment of an overriding royalty carries an interest in the real estate. United States v. Noble, 237 U. S. 74, 35 S. Ct. 532, 59 L. Ed. 844; Homestake Exploration Corp. v. Schoregge, 81 Mont. 604, 264 P. 388; Sunburst Oil & Refining Co. v. Callender, 84 Mont. 178, 274 P. 834; Robichaux v. Bordages (Tex. Civ. App.) 48 S.W.(2d) 698; Emerson v. Little Six Oil Co. (C. C. A.) 3 F.(2d) 265; Mills-Willingham, Law of Oil-Gas, § 128. These two constituent elements on each side of the contract were inseparable. Manifestly, neither party would have entered into the agreement without both being required of the other. We, therefore, have a case in which the parties agreed, among other things, to an exchange of interests in land, and the contract has been fully performed on plaintiff's part. Can a court of equity compel specific performance in that situation?

■■ The general principles of equity jurisprudence in dealing with specific performance of a parol contract invalid because it contravenes the statute of frauds are well recognized. Their application to divergent facts has occasioned some contrariety of opinion. Ordinarily, the mere rendition of services in complete performance of such a contract is not enough to justify specific performance unless they are of such peculiar character that their value cannot be measured accurately and adequately compensated in damages at law. But where one party, with the knowledge of the other, has been induced to do or forbear to do an act in performance of the agreement, has thereby changed his position for the worse in such manner that restoration to his former position is impossible and he cannot be adequately compensated at law, so that it would perpetrate a fraud upon him to permit the other party to take refuge in the statute, equity will intervene and enforce completion of the contract because the statute cannot be used to effect a fraud. The most frequent application of the doctrine has been in cases involving the sale of land, followed by change in possession and the erection of improvements, but those elements are not es-

sential to its appropriate application. Any act done or forborne in reliance upon the contract and in furtherance of its execution, which converts the enforcement of the statute into the perpetration of a fraud, is enough. That doctrine obtains in Oklahoma and elsewhere. Purcell v. Corder, 33 Okl. 68, 124 P. 457; Eggstaff v. Phelps, 99 Okl. 54, 226 P. 82; Miller v. Roberts, 140 Okl. 271, 282 P. 1104; Brooks v. Yarbrough (C. C. A.) 37 F.(2d) 527; Sears v. Redick (C. C. A.) 211 F. 856; Pomeroy's Specific Performance (3d Ed.) § 104.

Plaintiff executed and delivered the lease upon his own property, placed it in the community unit, thereby making it impossible for him to lease it to another. He has forborne that right and defendants developed oil on the block as a single unit. The leasehold estate was converted into a single unit and the several lessors have their respective rights in it. Manifestly, plaintiff cannot be restored to his former position, nor can he be adequately compensated at law because it is impossible to measure with accuracy the market value of an overriding royalty in a new and fast developing field where drilling proceeds rapidly, leases are bargained with avidity, and values fluctuate with the fortunes of production. For these reasons the doctrine that complete performance removes the contract from the statute has application here.

Equity decrees specific performance of a valid contract to sell real estate because land is sui generis and money damages for failure to perform are not adequate relief without reference to the quality or quantity of the land. Wilhite v. Skelton (C. C. A.) 149 F. 67; Kitchen v. Herring, 42 N. C. 190, 191; Clark v. Cagle, 141 Ga. 73, 82 S. E. 21, L. R. A. 1915A, 317; Bennett v. Moon, 110 Neb. 692, 194 N. W. 802, 31 A. L. R. 495; Larrabee v. Bjorkman, 79 Or. 467, 155 P. 974; Spencer v. Bales, 108 Or. 339, 216 P. 746. That general doctrine was applied in Williams v. Cow Gulch Oil Co. (C. C. A.) 270 F. 9, 11, which was an action for specific performance of a contract for the mutual exchange of oil and gas leases. The court held that no insuperable obstacle to specific performance was perceived. It was said:

"An action at law for damages for the breach of a contract to convey land does not afford as adequate a remedy as a suit in equity for specific performance, and it is no answer to such a suit because, in the case of a contract for real estate, the action at law does not place the parties in the same situation in which they were before the agreement was made, and it is not as prompt, complete, and efficient as is the suit in equity. Castle Creek Water Co. v. City of Aspen, 146 F. 8, 11, 76 C. C. A. 516, 519, 8 Ann. Cas. 660; Boyce v. Grundy, 3 Pet. 210, 215, 7 L. Ed. 655; Williams v. Neely, 134 F. 1, 10, 67 C. C. A. 171, 181, 69 L. R. A. 232; Wilhite v. Skelton, 149 F. 67, 72, 78 C. C. A. 635, 640.

"In equity, the vendee of land, or of a right or interest therein under a contract of the vendor to convey it to him, is treated as the owner thereof, and the vendor is deemed to stand seized of it in trust for the vendee, and when, as in the case at bar, the entire purchase price has been paid and is in the hands of the vendor, who refuses to perform his part of the agreement, the equity of the vendee is of the highest character, and specific performance of the contract may not be denied, unless it is forbidden by some insuperable principle or rule of law or equity."

Again, the facts in Matthewson v. Fluhman (Tex. Com. App.) 41 S.W.(2d) 204, 207, were that Fluhman and wife gave Matthewson an oil and gas lease on 36.6 acres of land. Fluhman and Matthewson subsequently entered into an oral agreement in which it was provided that Matthewson would surrender that lease and assist Fluhman to procure leases on other lands, and that, in consideration thereof, Fluhman would give him a commercial lease on a certain tract of 20 acres. Matthewson executed the release. Fluhman accepted and placed it of record, but refused to execute the new lease on the 20-acre tract. Instead, he leased it to a third person. Performance being thereby rendered impossible, Matthewson pleaded the contract, his complete performance, and sought damages representing the value of the lease. The court held that performance by Matthewson took the contract out of the statute, and that, since the lease to a third person rendered performance by Fluhman impossible, recovery could be had for the value of the lease on the 20-acre tract at the time of repudiation. Except for the impossibility of performance occasioned by the outstanding lease to the third person, specific performance would have been granted. Its theoretical equivalent in damages was the only available measure of relief, and that was given. The court said:

"We have reached the conclusion that the contract to lease the 20-acre tract to

plaintiff in error was enforceable, and that defendant in error, having himself placed it beyond his power to comply therewith, by conveying such lease to another, is liable for the value of such lease at the time he repudiated the same, which the jury found to be $8,000.

"The defendant in error cannot accept the leasehold estate on the 36.6-acre tract pursuant to his parol contract of exchange, reap the large benefits therefrom by the obtaining of producing wells thereon under his lease to Merrick, in the meantime assuring plaintiff in error that he would live up to his agreement to convey the leasehold estate on the 20-acre tract, and then refuse to perform when the extraordinary value of such leasehold was proven by the outcome of events, without accounting for such value at the time of refusal."

Since the contract under consideration included an exchange of interests in land, that is, an oil and gas lease on one hand and an overriding royalty on the other, and was fully performed by, plaintiff, we think that well-recognized doctrine supports the decree below.

Relying upon the agreement and in furtherance of its execution, plaintiff completely performed his part of it and soon thereafter demanded conveyance of the overriding royalty. Defendants negotiated with him until oil was struck. They then repudiated that part of the agreement and refused to make the assignment. Manifestly, it would perpetrate a palpable fraud on plaintiff to permit defendants to take shelter under the statute. It cannot be invoked for that purpose.

 The authority of Reinke to make the contract as agent for defendant Danciger Oil & Refining Company is challenged. The written contract under which he was employed contains the following provisions:

"Primarily Employee shall devote his entire time at the direction of Employer to the purchase and sale of leases and/or royalties, to working up drilling blocks, procuring acreage contributions, etc., from companies, assisting in procuring favorable contracts for tests, drilling, core-drilling, and investigating the oil fields and likely structures in the Oklahoma City area in the State of Oklahoma.

"Employee shall faithfully report his findings, negotiations and trades with prices, costs, geological reports and pertinent information bearing on any proposal which Employer shall consider, making at all times full disclosures of any royalties or collateral trades that might be made.

"Employee shall keep Employer fully advised as to his activities, furnishing all assistance possible in assembling of leases, assignments, royalties, drilling blocks, etc., but Employee shall not sign contracts or any memorandum in writing unless specifically authorized and instructed by Employer."

Reinke was in charge of the business of the defendants in Oklahoma. He had an assistant named J. B. Garrett; he employed a stenographer who was paid by defendants and he occupied a suite of offices in the Braniff building. Scott P. Squyres, one of the attorneys for defendants herein, shared the suite with him. The sign on the door read, "R. J. Reinke, Danciger Oil & Refining Company and J. B. Garrett." In May, 1930, defendant Danciger Oil & Refining Company telegraphed W. J. Talley at Oklahoma City, "Telegram date Reinke is our agent at Oklahoma City." Counsel for defendants expressly admitted during the trial that Reinke was the representative of the defendants. It is sought to limit the scope of that agency to the terms of the written agreement which required, according to the contention advanced, that he submit all proposed agreements to the company at Fort Worth, Tex., for approval. As between principal and agent, the scope of the latter's authority is that actually conferred. It may be conditioned, limited, or restricted, secretly or otherwise. But as between the principal and a third person dealing with the agent without notice of secret conditions or limitations upon the agency, the rule is different. Conditions or limitations secretly imposed upon the authority of an agent who acts within the apparent scope of his authority are not binding upon a third person dealing with the agent in good faith and without notice thereof. After holding Reinke out as its agent and permitting him to act with apparent authority in connection with the business in Oklahoma, defendants cannot assert the secret conditions imposed by the contract. Midland Savings & Loan Co. v. Sutton, 30 Okl. 448, 120 P. 1007; National Surety Co. v. Miozrany, 53 Okl. 322, 156 P. 651; Daniel v. Pappas, 93 Okl. 165, 220 P. 355; Atlas Assur. Co. v. The Hub, 109 Okl. 101, 235 P. 172; Continental Supply Co. v. Sinclair Oil & Gas Co., 109 Okl. 178, 235 P. 471; Consolidated Flour Mills Co. v. Roberts, 123 Okl. 101, 252 P.

29; Ætna Life Ins. Co. v. Eakins, 143 Okl. 52, 287 P. 402; Lyons Milling Co. v. Goffe & Carkener (C. C. A.) 46 F.(2d) 241, 83 A. L. R. 501. It is urged that plaintiff had notice of the limitations imposed upon Reinke's agency before the contract was executed. Reinke testified that he told plaintiff that he had a contract of employment under which everything he accepted had to be approved at the Fort Worth office; that he did not exhibit the contract, but told plaintiff about it. Plaintiff denied in general that the conversation outlined by Reinke ever occurred. The trial court necessarily found the issue of fact thus formed against defendants, and further found that Reinke's testimony was untrue in other material respects. A court of equity is not compelled to believe testimony merely because it is given. The facts and circumstances patent upon the record subject the testimony in question to doubt, and the court was justified in rejecting it.

Finally, it is urged that clear and satisfactory proof must be produced to remove a parol contract from the statute of frauds; that the testimony here presents a sharp conflict and therefore fails to meet the requirements in a case of this kind. The trial court was satisfied. We have examined it painstakingly and think it is clear, satisfactory, and convincing.

For the reasons indicated, the decree is affirmed.

LEWIS, Circuit Judge (dissenting).

This case demonstrates again the necessity and wisdom of the Statute of Frauds which has been adhered to by English speaking peoples since the reign of Charles II. With slight variations it has been enacted in every state in the Union. In Oklahoma the statute is this (section 9455, Okl. St. 1931):

"The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or by his agent: * * *

"Fifth. An agreement for the leasing for a longer period than one year, or for the sale of real property, or of an interest therein. * * * "

Here there is no escape from the conclusion that either plaintiff himself and his four or five witnesses committed perjury in testifying that the oral contract for a $\frac{1}{16}$ interest in the lease was made, or an officer of defendant Danciger Oil & Refining Company and its four other witnesses committed perjury in testifying that no such contract was made. The trial judge stated it mildly at the conclusion of the evidence:

"As to whether this contract was made between Mr. Reinke (defendant's agent) and this plaintiff, there is considerable conflict in the testimony."

The testimony is in direct conflict, not only on the main issue of fact—making the oral contract—but on collateral issues as well—the circumstances and occasions under which plaintiff claimed the contract was made. On the whole, I think I may safely say that no one can read the testimony and then with assured confidence reach and hold the conclusion that said contract was ever made. The lease involved was executed in May, 1930. Defendant admits plaintiff assisted in getting other lot owners in the block to sign the so-called community lease and that it is liable to him for those services. In fact it paid $10,000 to plaintiff's brothers, John and Walter, for like services in getting a lease to defendant on another block. Reinke testified that the first he knew that plaintiff was claiming a $\frac{1}{16}$ overriding royalty was when Joe Danciger called him on the telephone in the latter part of May or the early part of June, 1931; that he, Joe Danciger and plaintiff met at the Skirvin hotel in Oklahoma City in June, 1931, to discuss plaintiff's claim; that at that time he, Reinke, asked plaintiff Burroughs if he was willing to tell Joe Danciger that he, Reinke, had ever promised the $\frac{1}{16}$ overriding royalty; that Burroughs said, "No" but that he thought he ought to have it because other deals that he put up to Reinke did not go through; that on that occasion Burroughs said that unless defendant gave him the $\frac{1}{16}$ interest he would sue them on every lease he put up to them, and that he had since done so. Danciger testified also that at that meeting Reinke related all the details of different transactions with Burroughs, and Burroughs said he thought he ought to have a royalty interest; that Reinke then asked Burroughs if he had ever promised Burroughs a royalty, and Burroughs said "No, but that he thought he ought to have one on account of having done some work and other deals having fallen through;" that he, Danciger, did not at any time agree to give Burroughs an overriding $\frac{1}{16}$ royalty in any leases. It is of great significance to me that Burroughs did not deny in his testimony any of the statements of Reinke and Danciger.

Another matter that causes doubt is this: Plaintiff alleges in his complaint that each

lot owner in the block was to receive a bonus of $400 per full lot, that he was to receive $500 as part compensation for procuring the lease and was also to have an overriding $\frac{1}{16}$ royalty. He so testified. His witnesses testified that on different and separate occasions Reinke said to them or to others in their hearing that plaintiff was to have said royalty interest, but none of them testified that Reinke said anything about the $500 or the bonus payments per lot. I think it unreasonable that Reinke would have mentioned only the claimed royalty interest and said nothing about the $500 and approximately $3,000 that plaintiff was to receive as bonus, if the contract had been as plaintiff alleges. The testimony is too voluminous to quote or summarize. It must be read and when read I think it clear that the only reasonable conclusion is one of grave doubt of any such contract ever being made as claimed by plaintiff for an additional $\frac{1}{16}$ royalty. The lease reserved $\frac{1}{8}$ of minerals produced as royalty. Clearly on the point plaintiff did not comply with the settled rule as to the quantum of proof, as I see it.

On that subject in cases like this the Supreme Court in Purcell v. Miner, 4 Wall. 513, 517, 18 L. Ed. 435, said this:

"The statute, which requires such contracts to be in writing, is equally binding on courts of equity as courts of law. Every day's experience more fully demonstrates that this statute was founded in wisdom, and absolutely necessary to preserve the title to real property from the chances, the uncertainty, and the fraud attending the admission of parol testimony. It has been often regretted by judges that courts of equity have not required as rigid an execution of the statute as courts of law. * * *

"A mere breach of a parol promise will not make a case for the interference of a chancellor. It is plain that a party who claims such interference has the burden of proof thrown on him. He knows that the law requires written evidence of such contracts, in order to their validity. He has acted with great negligence and folly who has paid his money without getting his deed. When he requests a court to interfere for him, and save him from the consequences of his own disregard of the law, he should be held rigidly to full, satisfactory, and indubitable proof—

"First. Of the contract, and of its terms. Such proof must be clear, definite, and conclusive, and must show a contract, leaving

no jus deliberandi, or locus pœnitentiæ. It cannot be made out by mere hearsay, or evidence of the declarations of a party to mere strangers to the transaction, in chance conversation, which the witness had no reason to recollect from interest in the subject-matter, which may have been imperfectly heard, or inaccurately remembered, perverted, or altogether fabricated; testimony, therefore, impossible to be contradicted."

Much of the testimony for plaintiff in this case is of that character. I am therefore of opinion that plaintiff's case should have been dismissed below because of the insufficiency of proof; but there are other reasons.

Obviously plaintiff could have sued at law for the value of his services in aiding defendant in the procurement of the lease from other lot owners in the block. He alleged in his complaint:

"That on or about May 12th, 1930, defendant requested plaintiff to procure for it as lessee, an oil and gas lease on said Block 31, from the owners of said 32 lots, and verbally offered, agreed and contracted to and with plaintiff to pay and compensate him for such service a one-sixteenth ($\frac{1}{16}$) overriding royalty interest in said Block and lease, that is, a right to receive $\frac{1}{16}$ of all oil and gas and casinghead gas produced from said Block. Said $\frac{1}{16}$ overriding royalty interest to be conveyed to plaintiff by proper written instrument after and when he had procured for said defendant as lessee said oil and gas lease, and in addition to said interest to pay plaintiff $500.00.

"That plaintiff has fully performed said contract on his part; that he procured for said defendant as lessee, said oil and gas lease covering all of said 32 lots, on lease form furnished by defendant, and at a cash bonus to the various lot owners, agreed to, and authorized by said defendant, of $400.00 per full lot. * * *

"That when said Danciger Oil & Refining Company paid plaintiff the oil lease bonus for his eight lots in said Block, two being short lots, on the agreed lease bonus of $400.00 per full lot, it paid him an additional sum of $——— as a payment on the $500.00 due plaintiff as a part of the compensation and consideration due him, as aforesaid, for procuring said lease."

Plaintiff's testimony is in exact accord with those allegations, except he did not testify his $\frac{1}{16}$ interest was to be in all oil to be produced from the Block, or in the Block

and lease. He testified that he went to see Reinke in May, 1930; that he asked him if he would be interested in block 31, and Reinke said he would; "Reinke told him he would pay $400 per lot for a lease on that block, and that if Burroughs would get the lease all signed up, that Reinke would give him $500 and a 1/16 overriding royalty interest, and that Burroughs agreed to secure the lease on these terms." It is plain from allegations and this testimony of plaintiff that his services were to consist only in getting the lease "all signed up," that is, by other owners of lots in the block. There is no claim and no testimony that plaintiff should have the additional 1/16 royalty interest on all oil to be produced from the whole block in consideration of plaintiff putting his eight lots into the lease. That would be grossly unreasonable. Certainly he was not to be paid for services in procuring his own signature to the lease which covered eight lots belonging to him. That was compensated by his share of reserved royalty and the $400 bonus per lot. Those items stand as the main and expressed consideration for the giving of all such leases. The lease in this case is not in the record, but there is no claim that the 1/16 royalty interest claimed by plaintiff was named in the lease as consideration for it. In Dunphy v. Ryan, 116 U. S. 491, 6 S. Ct. 486, 488, 29 L. Ed. 703, the court said:

"It is a contract for the sale of lands, and, not being in writing, signed by the vendor, is void. * * * A contract void by the statute cannot be enforced directly or collaterally. It confers no right and creates no obligation as between the parties to it. * * *

"It is well settled that when one person pays money or performs services for another upon a contract void under the statute of frauds, he may recover the money upon a count for money paid to the use of defendant at his request, or recover for the services upon the quantum meruit count. * * *

"But the defendant's counsel further insist that there has been such a part performance of the contract as entitles the defendant to equitable relief, on the ground that it would be a fraud on him not to enforce the contract. * * *

"As between these parties there has been no payment, no possession, and no improvements. The only complaint of misconduct on the part of the plaintiff which can be inferred from the pleadings is his refusal to perform a verbal contract for the purchase of lands. But the mere breach of a verbal promise for the purchase of lands will not justify the interference of a court of equity. Purcell v. Miner, 4 Wall. 513 [18 L. Ed. 435]. There is no fraud in such a refusal. The party who so refuses, stands upon the law, and has a right to refuse. Under the circumstances of this case the statute is as binding on a court of equity as on a court of law. If the mere refusal of a party to perform a parol contract for the sale of lands could be construed to be such a fraud as would give a court of equity jurisdiction to enforce it, the statute of frauds would be rendered vain and nugatory. The defendant knew, or ought to have known, that the statute requires such a contract as the one he seeks to enforce to be evidenced by writing. That he did not exact a contract in writing is his own fault. Courts of equity are not established to relieve parties from the consequences of their own negligence or folly.

"The statute of frauds is founded in wisdom, and has been justified by long experience. As was said by Mr. Justice Grier, in Purcell v. Miner, ubi supra, the statute 'is absolutely necessary to preserve the title to real property from the chances, the uncertainty, and the fraud attending the admission of parol testimony.' It should be enforced."

Also see our opinion on this point in Brooks v. Yarbrough, 37 F.(2d) 527, 533. I see no reason why plaintiff could not recover at law on quantum meruit for the full value of the services he alleges he rendered.

A third reason for this dissent is, there was no act of part performance by plaintiff, as claimed, sufficient to take his case out of the statute of frauds. I have called attention to the character of plaintiff's pleadings and his testimony, that the claimed contract is one for services. The answer admits that about May 12, 1930, Danciger Oil and Refining Company requested plaintiff to procure for it as lessee an oil and gas lease on block 31 from the owners of the lots and agreed with plaintiff to pay and compensate him a reasonable amount for such services. It denies that it at any time agreed to give him a 1/16 interest in the lease. It admits that plaintiff assisted in procuring the lease at a cash bonus to the various lot owners of $400 per lot. It denies that it agreed to pay plaintiff $500 for his services or any other stated amount. In Wil-

liams v. Morris, 95 U. S. 444, 456, 24 L. Ed. 360, the court said:

"Where the attempt is to take the case out of the statute upon the ground of part performance, the party making the attempt must show by clear and satisfactory proof the existence of the contract as laid in his pleading, and the act of part performance must be of the identical contract which he has in that manner set up and alleged. It is not enough that the act of part performance is evidence of some agreement; but it must be unequivocal and satisfactory evidence of the particular agreement charged in the bill or answer."

In Winslow v. B. & O. R. R., 188 U. S. 646, 658, 23 S. Ct. 443, 447, 47 L. Ed. 635, the court said:

"Acts of part performance which will take a case out of the statute must be referable solely to the contract."

Snell's Principles of Equity, page 462, has this:

"The acts of part-performance must be such as are not only referable to an agreement such as that alleged, but such as are referable to no other title. For if they are acts which might have been done with other views, they will not take the case out of the statute, since they cannot properly be said to be done by way of part-performance of the agreement."

Browne on the Statute of Frauds, § 454:

"Another general rule in regard to the acts relied upon is, that they must appear to have been done *in pursuance* of the contract alleged. To use the language of Lord Hardwicke, 'It must be such an act done as appears to the court would not have been done except on account of the agreement;' or, as it is expressed by Sir William Grant, it must be 'an act unequivocally referring to, and resulting from, the agreement.'" (Sec. 455) "the acts relied on must ultimately appear to have been done in pursuance of the contract sought to be enforced, or the whole equity of the plaintiff fails. * * * 'It is in general of the essence of such an act that the court shall by reason of the act itself, without knowing whether there was an agreement or not, find the parties unequivocally in a position different from that which, according to their legal rights, they would be in if there were no contract.' "

Browne further says in section 457:

"Great danger of fraud and perjury would be incurred in admitting proof that the plaintiff had in fact been induced by the agreement to do the acts relied on; and moreover, the important characteristics of an act of part-performance, that it shows of itself an agreement of some sort concluded between the parties, could scarcely be said to exist in such a case."

Burns v. McCormick, 233 N. Y. 230, 135 N. E. 273; Cooper v. Colson, 66 N. J. Eq. 328, 58 A. 337, 105 Am. St. Rep. 660, 1 Ann. Cas. 997.

Moreover, it is said in Whitney v. Hay, 181 U. S. 77, 89, 21 S. Ct. 537, 542, 45 L. Ed. 758, that a decree in such a case as this does not charge the defendant upon the parol contract, "but rests upon the equities arising out of the acts and conduct of the parties subsequent to the making of the original agreement." I therefore say that neither on the situation set forth in the pleadings nor under all the circumstances disclosed by the testimony can the acts claimed by plaintiff be referable solely to the claimed verbal contract, nor did those acts create equitable right in plaintiff.

Fourthly. The District Judge was misled by the opinion in King v. Gant, 77 Okl. 105, 186 P. 960. He erred in matter of law in following the decision in that case. He said at the close of the evidence: "I have read this case of King v. Gant, and I think that is the law in Oklahoma. I think the court is compelled to follow it." Subsequent to the decision in King v. Gant, the Supreme Court of Oklahoma rendered its decision in Hall v. Haer, 160 Okl. 118, 16 P.(2d) 83. The opinion in that case was rendered November 15, 1932, long prior to the decision of the District Judge in the case we are now considering. Clearly, it seems to me, Hall v. Haer overruled King v. Gant sub silentio. The syllabus by the court in Hall v. Haer, is this:

"1. An oral agreement by an owner of land to convey an undivided half interest in the minerals therein to another person in consideration of services to be rendered is within the statute of frauds and unenforceable.

"2. The mere performance of the services under such parol agreement is not, in itself, sufficient to take it out of the statute."

In that case the first paragraph of the opinion of the court is this:

"This is an action in equity brought in the district court of Pottawatomie county by Fred Hall against Emmett and Rinna Haer, the effect of which is to compel specific performance of an alleged oral agreement to

convey to him an undivided one-half interest in the minerals lying in and under 80 acres of land located in that county; and for an accounting."

The facts stated in that case are that Haer, owner of the land, gave an oil and gas lease. The lessee drilled to the Wilcox sand passing through the Hunton lime from which no production was attempted. The well was abandoned as a dry hole and was to be plugged. The owners of the land entered into a contract with the plaintiff whereby he was to make arrangements with the company that drilled that well; that the land owner would purchase the casing in the well, and they did purchase it. The plaintiff Hall contended—

"That it was further agreed between the parties that, in plugging the well, plaintiff should so plug it as to protect the Hunton lime; that it should be so plugged that it could be opened and produced in the Hunton lime; that, in consideration for this service, after expenses of production were paid, he should have a half interest in the profits of the producing well, and defendants should convey to him an undivided half interest in the minerals in 80 acres of the land surrounding the well. Plaintiff testified that he performed his part of the agreement; that in plugging the well he was particular to place the plug so as not to damage the Hunton lime; that he plugged off the salt water in the Wilcox sand, and, after doing so, poured four sacks of cement on top of the plug. He further testified that thereafter defendants opened the well and took large quantities of oil therefrom; that they failed to account to him for any part thereof, and refused to convey to him the interest in the minerals in the land."

In that case the defendants offered no evidence. The lower court dismissed the plaintiff's bill on the ground that the contract was invalid under the Statute of Frauds, and that ruling was affirmed. I am therefore unable to agree to the distinction which the majority opinion undertakes to make on the facts and their legal consequences as between King v. Gant and Hall v. Haer. The case of Hall v. Haer, supra, is cited by the court with approval in the late case of St. Louis Trading Co. v. Barr, 168 Okl. 184, 32 P.(2d) 293.

Danciger Oil & Refining Company has its main office at Fort Worth, Texas. It sent Reinke into the Oklahoma City oil fields with express limited powers to act for it. The acts which he was delegated to do are set forth in a written contract. Among other provisions it contains this: "But employe (Reinke) shall not sign contracts or any memorandum in writing unless specifically authorized and instructed by employer." Reinke testified that he told Burroughs he had an employment contract under which everything he accepted had to be approved by the Fort Worth office, that he did not show him the contract but told him about it. Burroughs made no specific denial of that statement by Reinke in his testimony. The record, however, contains this broad statement as to a part of Burroughs' testimony when he was called in rebuttal, "the substance of the remainder of his (Burroughs') testimony was that he denied that the conversation as outlined by Reinke in his testimony ever occurred." It is impossible to state whether Burroughs thereby intended to deny the statement by Reinke that he told Burroughs about the limitation on his agency. The plaintiff below attempted to show general agency on the part of Reinke by adducing evidence that the name of defendant company was on the door of the offices Reinke occupied, and that Reinke was the agent of all business for defendant at Oklahoma City, but there was no testimony that he ever gave anyone a royalty interest in defendant's oil leases. In fact he told Burroughs the first time the latter suggested a royalty interest "that he would not submit that offer to the company, that it was against their policy and useless to talk about it." Burroughs denied that such a statement was made. The Statute of Frauds contains this immediately following the excerpt therefrom in the early part of this dissent:

"And such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent be in writing, subscribed by the party sought to be charged." (St. Okl. 1931, § 9455.)

There is no claim that this part of the statute was complied with. There was no writing by the Danciger Oil & Refining Company giving Reinke authority to sell any of its interests in its leases. Burroughs made no effort to ascertain the extent of Reinke's authority. Mechem on Agency (2d Ed.) Vol. 1, § 743. I therefore dissent from the conclusion of the majority opinion on this point also. Reinke could not bind his principal to contract away an interest in its lease without the approval of his employer. Burroughs makes a pretense at showing that there were statements and acts on the part

of an officer of defendant to the effect that Reinke's claimed promise to give the ⅟₁₆ royalty were approved by defendant, but to me they are so weak and uncertain, in addition to being positively denied and not in accord with other facts, as to be without probative effect.