## ROSEBOOM v. BAUGHMAN.

No. 23420.    Nov. 13, 1934.

Wilson & Wilson, for plaintiff in error.

R. F. Shutler, for defendant in error.

PER CURIAM. This is an appeal from

a judgment of the district court of Garfield county refusing to award plaintiff in error an attorney fee. On November 19, 1930, plaintiff in error and Geo. W. Buckner, as attorneys for Marie D. Baughman, instituted an action against the Central National Bank, A. E. Stephenson, W. L. Stephenson, W. J. Otjen, H. O. Glasser, W. H. Hills, Joe McKenzie, J. A. Patterson, and Earnest Henrique for the purpose of vacating and setting aside a certain trust agreement entered into by Mrs. Baughman with the bank, whereby she conveyed and assigned to the latter certain stocks and bonds in trust for her sister, Sophie E. Offenbaker. It was alleged that the execution of the trust agreement on Mrs. Baughman's part was induced by and was the result of a conspiracy on part of the defendants to cheat and defraud her of said bonds, stocks, and other personal property.

On November 21, 1930, an amended petition was filed in that action on Mrs. Baughman's behalf, which omitted all direct allegations of fraud on the part of the bank, but alleged that the execution of the trust agreement was the result of a fraudulent conspiracy on the part of the individual defendants and other persons and corporations to the plaintiff unknown. On November 22, 1930, the bank filed a pleading consenting that the trust be vacated and set aside; and on January 6, 1931, it filed its answer reiterating its consent to the vacation of the trust, but praying that the court pass upon the competency of Mrs. Baughman before so doing.

On February 26, 1931, Sophie E. Offenbaker, the beneficiary of the trust, by plaintiff in error and Geo. W. Buckner as her attorneys, entered her appearance and filed an answer wherein she disclaimed and renounced any right, title or interest, either legal or as beneficiary, in any of the property held under the trust agreement. The other defendants' answers were general and specific denials.

On March 14, 1931, upon trial of the cause, the court sustained demurrers of the individual defendants to the evidence against them and dismissed the action so far as they were concerned. The court further ordered and adjudged Mrs. Baughman competent, and upon the prayer of her petition and the consent of the trustee and beneficiary, it entered its decree setting aside the trust agreement and directing the delivery of the trust assets to her.

On March 18, 1931, the bank filed in said cause an application in which it averred that Geo. W. Buckner and plaintiff in error were asserting an attorneys' lien against the trust assets in the bank's possession, which rendered it unsafe to pay the same over to Mrs. Baughman, and it prayed the court to determine whether or not such a lien existed. Thereupon, on April 1, 1931, plaintiff in error and Geo. W. Buckner, purporting to proceed under sections 4101 and 4103, Compiled Oklahoma Statutes 1921 (sections 4205, 4207, Okla. Stats. 1931), filed a motion in said cause for a judgment against Mrs. Baughman for an attorney's fee in the amount provided for in their contract with her. Mrs. Baughman answered and alleged that the contract was unreasonable, unconscionable, and was procured by fraudulent representations made to her by plaintiff in error. In the contract for attorney's fee, Mrs. Baughman had purported to employ Buckner and plaintiff in error to prosecute the action against the bank and to pay as attorney's fee $200 in cash and an additional sum equal to 10 per cent. of the recovery, or its value, and the $200 was paid when the contract was signed. In her answer Mrs. Baughman alleged that she did not know when she signed the contract, that it provided for employment of plaintiff in error or Buckner to institute that suit, but that it was represented to her as a contract employing them to prosecute proceedings for the recovery of certain moneys of which she had allegedly been defrauded by a royalty company, and that the suit actually filed was unnecessary and was filed without her authority or consent. Before the trial upon the application for attorney's fee, plaintiff in error acquired Buckner's interest in the contract.

In the trial a vast amount of testimony was introduced, much of which was wholly irrelevant.

At its conclusion the court rendered judgment denying the application for attorney's fee and subsequently overruled a motion for new trial. It is from that judgment and order that this appeal is taken. The court has examined the testimony introduced, since no objection was made thereto by plaintiff in error. It appears from the evidence that Mrs. Baughman was a widow susceptible of being easily influenced and imposed upon in business matters; that on the death of her husband she received from his estate money, stocks, bonds and other securities of considerable value; that she had been imposed upon by designing persons who had induced her to invest approximately $22,000 in a royalty company, and that she had sued that company in the district court of Tulsa

county to recover the amount of her investment; that on or about November 12, 1930, and prior to the date of the contract of employment here involved, Mrs. Baughman was approached by one W. B. Worden at her home in Kingfisher, who stated that he could recover for her the money which she had lost in the royalty company, providing she would dismiss her action against it then pending in the district court of Tulsa county, in which action H. O. Glasser and W. J. Otjen were her attorneys, and Worden recommended that she employ plaintiff in error as her attorney, stating that plaintiff in error was a friend of Worden's; that they worked together and that he knew that he and plaintiff in error could get for her the money out of which she had allegedly been defrauded by the royalty company. The evidence shows that Worden took Mrs. Baughman to Enid the next morning and conducted her to plaintiff in error's office; that she told plaintiff in error about losing her money in the royalty company, and that afternoon she and plaintiff in error, Mrs. Offenbaker, her sister, and Worden went to Tulsa for the purpose of dismissing her action there against the royalty company. There is a conflict in the testimony as to why the plaintiff in error accompanied Mrs. Baughman on this trip. Plaintiff in error testified that Worden brought Mrs. Baughman to his office on the morning of November 13, 1930, at which time the matter of procuring her property from the Central National Bank was discussed; that he went to the bank, talked to its president, Mr. Stephenson, and told the latter that he had come to get Mrs. Baughman's bonds, stocks, etc., from her safety deposit box; that he had the two keys thereto; that he was then advised for the first time that the bank held such bonds, stocks, etc., under a trust agreement executed by Mrs. Baughman and that the bank would not consent to a vacation of the trust; that in the afternoon of November 13, 1930, he and Mrs. Baughman, Worden, and Mrs. Offenbaker left for Tulsa, and that he went because Mrs. Baughman told him she wanted him to protect her; that in Tulsa they went to the office of a Mr. Gowdy, who had filed a purported dismissal of Mrs. Baughman's action, the validity of which dismissal was being questioned by the district court of that county; that Gowdy prepared in the presence of Mrs. Baughman and plaintiff in error affidavits of a scurrilous nature to be filed in that case, which plaintiff in error advised Mrs. Baughman not to sign; that thereupon plaintiff in error, Mrs. Baughman, Gowdy, and Worden went to the home of the district judge in Tulsa, to whom had been assigned the case against the royalty company, for the purpose of obtaining the latter's signature on an order dismissing that case, although the plaintiff in error testified that he was not Mrs. Baughman's attorney in that case. From the evidence as a whole, we are of the opinion that the acts and conduct of the parties manifest a clear intent on Mrs. Baughman's part that plaintiff in error should be her advisor and attorney and should protect her interest in that transaction, and that it was likewise plaintiff in error's conception of his relation to her at that time that he was representing her as attorney therein.

Upon their return from Tulsa in the evening of November 13, 1930, Mrs. Baughman and her sister, Mrs. Offenbaker, went to the home of plaintiff in error and spent the night, and the next morning they went to plaintiff in error's office, where the written contract of employment relied upon by plaintiff in error was entered into and signed by Mrs. Baughman. She testified that she did not have her glasses with her at that time and was therefore unable to read the contract; that plaintiff in error purported to read the same to her; and that she understood the same as employing plaintiff in error to recover the $22,000 she had invested in the royalty company, and not as a contract employing him to recover for her the property held by the Central National Bank in trust, which latter property she did not consider to be in danger of being lost.

There is evidence to the effect that plaintiff in error, before filing the action to vacate the trust, requested the executive officers of the Central National Bank and its attorney to consent to a vacation thereof and that they refused. On the other hand, the executive officers testified that when plaintiff in error approached them with reference to the trust they stated they would have to confer with the bank's attorney, W. H. Hills; that they did confer with Mr. Hills, and he advised that the bank could not safely consent to the vacation of the trust because of the interest of the beneficiary named therein; that they did not tell plaintiff in error that they were willing that the trust be vacated in the first conversation, but did do so after a conference with the bank's attorney, and before suit was filed, and the fact that the bank, three days after the filing of the suit, filed its consent to the vacation of the trust tends to corroborate that testimony. The evidence tends to show that Mrs. Baughman's suit against the bank and others was hurriedly and unnecessarily filed. There is no evidence

indicating that the bank had ever declined a request on Mrs. Baughman's part, with the consent of the beneficiary, for the abrogation of the trust. There is no evidence of any effort or intent upon the part of the bank or its officers, or any of the other defendants in that action, to defraud Mrs. Baughman out of any of her property. Apparently the suit was instituted for the sole purpose of enabling plaintiff in error to obtain from Mrs. Baughman an attorney's fee of $200 and 10 per cent. of the value of the property included in the trust.

After examining the entire record, we cannot say that the trial court erred in finding that Mrs. Baughman was imposed upon by plaintiff in error and Worden in procuring her to enter into the contract of employment of November 14, 1930. It is the duty of an attorney to act toward his client with the utmost good faith and fidelity. It is the general rule that where the relation of attorney and client exists and during its existence another contract is entered into between them, the good faith of which is subsequently called into question, the burden is upon the attorney to establish that it was fairly made, without fraud, duress, or imposition. Kort v. Brown, 124 Okla. 288, 255 P. 1103; French v. Cunningham (Ind.) 49 N. E. 797; Blaikie v. Post, 122 N. Y. Supp. 292; Ridge v. Healy (C. C. A.) 251 Fed. 798; Albert v. Munter (Wash.) 239 P. 216; Coon v. Ewing (Tex. Civ. App.) 275 S. W. 481; Enyart v. Orr (Colo.) 238 P. 29; 66 Corpus Juris, 735, sec. 310.

In volume 2, R. C. L. 956, sec. 44, it is stated:

"The relation of attorney and client is, as has been seen, one of high trust and confidence, requiring from the attorney the observance of the utmost good faith toward his client, and the parties have been held to sustain to each other, during the time the relationship exists, in respect to any matter being conducted for the client by the attorney, the relation of trustee and cestui que trust, and their dealings with each other are subject to the same intendments and imputations as obtained between other trustees and beneficiaries. The relationship gives to the attorney great influence and control over the actions and interests of his client and in view of such fact all dealings between attorney and client will be closely scrutinized by the courts and transactions between them are often declared to be voidable which would be deemed unobjectionable between other parties. The burden is on the attorney to show that the transaction is fair and equitable and that the client was fully informed of his rights and interest in the subject- matter of the transaction and of the nature and effect of the transaction itself, and was so placed as to be able to deal with the attorney at arm's length."

We are of the opinion that at the time this contract was entered into the relation of attorney and client already existed between Mrs. Baughman and the plaintiff in error, and that the rule above stated applies, viz., that the burden was on plaintiff in error to establish by a fair preponderance of the evidence that the subsequent contract was fair and just and that its execution was free from fraud or undue influence. It is the opinion of the court that the plaintiff in error wholly failed to sustain the burden of showing that the contract sued upon was fair and equitable, or that the same was entered into in good faith, or that any necessity for filing the action against the Central National Bank and the other defendants actually existed at the time the contract for attorney's fees was entered into.

The judgment of the trial court is therefore affirmed.

The Supreme Court acknowledges the aid of Attorneys John F. Webster, D. A. Richardson, and Robert M. Rainey in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Webster, and approved by Mr. Richardson and Mr. Rainey, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.