Katherine ANDERSON, Henry Kates, C. L. McMahon, Inc., and Charles L. McMahon, Jr., Plaintiffs in Error,

v.

Joel A. WOLFE and A. L. Solliday, Defendants in Error.

No. 39287.

Supreme Court of Oklahoma.

Dec. 12, 1961.

Rehearing Denied Feb. 6, 1962.

**656**

John Connolly, W. A. Carlile, Oklahoma City, for plaintiff in error.

W. F. Semple, Tulsa, for defendants in error.

JACKSON, Justice.

In 1944, the law firm of Green and Farmer was retained by one Katherine Anderson to represent her in a suit brought by her mother, Maud Anderson, to have conveyances of about 240 acres of real estate from the mother to the daughter and other children vacated. Green and Farmer successfully defended the law suit in the District Court of Tulsa County and also on appeal in this court (see Anderson v. Anderson, 197 Okl. 635, 173 P.2d 947.) On November 9, 1949, the attorney fee due Green and Farmer not having been paid, Katherine Anderson signed a contract by the terms of which she agreed to convey a 12½ acre tract of real estate out of the 240 acre tract to Green and Farmer in payment of the fee, subject to a life estate in the mother.

The mother died prior to the bringing of the instant action.

By mesne conveyances, the interest of Green and Farmer in the tract of land became vested in Joel A. Wolfe and A. L. Solliday. Subsequent to the execution and recording of the contract of November 9, 1949, Katherine Anderson executed deeds conveying the 12½ acres, together with adjoining lands, to Henry Kates.

On January 19, 1959, Wolfe and Solliday, as plaintiffs, began the instant action in which they sought specific performance of the contract, a decree quieting their title, and other relief to be hereinafter noted. Defendants were Katherine Anderson, Henry Kates and other defendants for whom it was alleged Kates was holding the title in trust.

Miss Anderson filed an answer generally alleging fraud in the procurement of the contract, and specifically alleging that she did not read the contract before signing it. She further pleaded that immediately upon returning to her home, and on the same day, she read her copy of the contract and began trying to reach Mr. Green by phone for the purpose of repudiating the contract. She attached to her answer a copy of a letter she wrote Mr. Green on November 15, 1949, wherein she requested that the contract be modified to recite an attorney's fee of $515.00.

Judgment in the trial court was for plaintiffs, and only defendant Katherine Anderson appeals.

It is agreed that all parties hereto had notice of all claims of the other parties, and that the trial court's judgment "must stand or fall" on the validity of the contract between Katherine Anderson and her attorneys, Green and Farmer.

In their answer brief on appeal, defendants in error have renewed a motion to dismiss this appeal. We have examined the argument and authorities presented and find them to be without substantial merit, and will therefore consider this case on its merits.

The first proposition of defendant (plaintiff in error) is generally that Green and Farmer "overreached" their client in the procurement of the contract, refused to take a cash fee, and at all times planned and schemed to get part of the lands of their client.

Mr. Green testified for plaintiffs that no specific fee was ever agreed upon, although he did agree that the figure of $500.00 was discussed immediately after the district court trial and before the case was appealed to the Supreme Court. He testified to intermittent efforts to collect a fee from the time the mandate came down from the Supreme Court in 1946, to the time the contract was executed on November 9, 1949. He said with regard to Miss Anderson that "She was always complaining that she had no money * * *, we discussed the apportioning of this land * * *".

With regard to the execution of the contract, Mr. Green testified that Miss Anderson came to his office, and that they discussed with Mr. Farmer, his partner, the matter of taking a part of the land as a fee. Mr. Farmer and Miss Anderson then sat down and figured out the legal description of the acreage concerned and Mr. Farmer dictated the contract. After taking some time to read it over, Miss Anderson suggested a change to be hereinafter noted; the change was incorporated in the contract, after which it was signed by all parties and acknowledged before a secretary in the office who was a notary public.

His testimony in this regard is supported in part by the testimony of Mr. Farmer and the notary public.

Miss Anderson testified that on the morning of November 9, 1949, she went to the office to discuss the appointment of a guardian for her mother; that when she was ready to leave, Mr. Farmer brought the contract in to Mr. Green's office, and Mr. Green asked her to sign it as "just an office record"; that she then signed it without reading it and left the office, taking a copy with her.

There were no other witnesses to the execution of the contract.

On the question of the amount of the fee, Miss Anderson testified that she and her brother offered to pay $500 immediately after the district court trial, and that she agreed to pay $600 after the case was affirmed in the Supreme Court. Her testimony was supported in part by the testimony of her brother.

Although Miss Anderson pleaded and testified that she began to try to reach Mr. Green by phone on the same day the contract was executed to repudiate it, the record shows that on November 10, 1949 (the next day) she wrote him a letter in which she said in part "Mr. Green I have proved myself—by signing that contract yesterday".

On November 15, 1949, Miss Anderson began a series of letters to Mr. Green and others filled with vilification, abuse and intemperate language in which she accused him of fraud and trickery and demanded that the contract be rewritten. It was shown that she made complaint to the grievance committee of the Tulsa County Bar Association regarding Mr. Green, then did not appear at the hearing of the charges.

In the letter of November 15, 1949, she said, among other things, "In the first place you told me you just wanted a building site—2 or 3 acres, and I thought the contract called for that until I got home and read it over— * * *". This would indicate that she *did* know when she signed the contract that some real estate was involved, and that the controversy was in connection with *how much* real estate. In her answer and cross petition she alleged that she did not read the contract and had no idea what was in it.

There was no allegation or contention that Miss Anderson was of less than normal intelligence, or that she was inexperienced in business matters. On the contrary, the record shows that she had been involved in a considerable amount of litigation with other members of her family, concerning the family real estate.

In support of her arguments under the proposition that she has been overreached, Miss Anderson cites Roseboom v. Baughman, 169 Okl. 442, 37 P.2d 616; Board of Com'rs of Okfuskee County v. Hazelwood, 79 Okl. 185, 192 P. 217, 11 A.L.R. 709; and other cases to the general effect that contracts between attorney and client will

be closely scrutinized, and that the burden is upon the attorney to show that they are fair, just and equitable.

In this connection we note that the trial court found the facts to be substantially as testified to by Mr. Green and Mr. Farmer. The court further found that the contract was executed by Miss Anderson without the exercise upon her of any undue influence; that it was just and reasonable; and that the consideration moving to the attorneys was not disproportionate to the value of the services rendered. There was evidence that the land was worth approximately $250.00 per acre on the date the contract was signed. The court specifically found that the contract was read by Miss Anderson before she signed it, and that a change was made in it at her suggestion.

Although the evidence here was in direct conflict, after a careful examination thereof, we hold that plaintiffs sustained the burden of showing that the attorney-client contract was fair, just and equitable, and that the findings and judgment of the trial court in that regard are not clearly against the weight of the evidence. The judgment so finding will not be disturbed. Priddy v. Shires, 204 Okl. 664, 233 P.2d 298.

Miss Anderson argues that the judgment must be reversed for other reasons, which requires further explanation of the contract, pleadings and procedure herein.

As originally drawn, the contract called for the transfer of 12½ acres of land specifically described. The trial court found that after the contract had been examined by Miss Anderson, she suggested the possibility that either one of two producing oil wells might be included within the lands described, and that a proviso should be included in the contract to take care of that eventuality, since she did not wish to convey the lands upon which the wells were located. The following paragraph was then inserted in the contract.

"There are two (2) oil wells on the Northwest Quarter (NW¼) of the Northwest Quarter (NW¼) of said Section four (4). If it develops said wells, or either of them, are on the 12½ acres described herein or within 165 feet of the North line of said 12½ acres, then the parties will move the 12½ acres south a sufficient distance so that the north line of the 12½ acres will be 165 feet south of the most southerly oil well of the two."

In their petition, plaintiffs herein included, among other things, a prayer for judgment "decreeing these plaintiffs to be the legal and equitable owners in fee absolute as to 12½ acres to be ascertained, fixed and determined in accordance with the agreement herein referred to as Exhibit 'A'." Exhibit "A" was a copy of the contract.

This case was tried on August 4th and 5th, 1959, and at the conclusion of the hearing on August 5th, both sides rested and the court took the case under advisement, with defendant Anderson to submit a brief.

From the briefs on appeal, it appears that with all parties present in court on September 15, 1959, the court announced a judgment in the case. His remarks were apparently not taken down by a court reporter, and are not included in the record, but it appears that he gave directions as to how the survey should be made. A minute was entered upon the appearance docket on September 15, 1959, ending as follows: "* * * Judgment for plaintiffs *as prayed for in petition. Exact location of the 12½ acres involved to be determined by survey, all as per J. E.*". (Emphasis supplied.)

Thereafter counsel for plaintiffs submitted a proposed "Interlocutory Order and Decree" to counsel for defendants, which they did not approve. On February 2, 1960, further hearing was had in the case, and after considerable discussion as to the contents of the "Interlocutory Order and Decree", the same was signed and filed by the court. The court then proceeded to hear testimony regarding a "Report of Survey" which had previously been filed. At the conclusion of the hearing, the court rendered final judgment specifically describing the real estate as surveyed.

In this connection, defendant argues that the judgment of the court reflected by the minute entry of September 15, 1959, was a final judgment; and that the court erred in reopening the case for the presentation of further evidence in connection with the survey at the hearing on February 2, 1960.

The record does not support this argument. The petition prayed that the exact location of the acreage be determined; there was testimony at the trial that the 12½ acres would have to be moved in order not to include the oil wells; the minute entry of September 15, 1959, and the Interlocutory Order and decree, clearly show that the location of the 12½ acres would be determined by survey. While the trial court did enter judgment for plaintiffs on September 15, "all as per J. E." it is equally clear that the trial court gave instructions for a survey in order that the exact location of the acreage could be ascertained by survey and described in the final judgment of the court. Final judgment was not entered and was never intended to be entered until after the description of the land could be ascertained by survey and described in the final judgment of the court. Final judgment was not entered and was never intended to be entered until after the description of the land could be ascertained by survey. The facts here do not present a situation where the trial court "reopened the case for further evidence". The case was never closed until after the court had received the report of the survey and utilized it in rendering final judgment. In this situation it was not necessary for plaintiffs to file a motion to reopen the case for the taking of further testimony. We find no error in this connection.

 Defendant also argues that the contract involved was not sufficiently definite as to the lands concerned, to support an order for specific performance. In support of this argument, defendant cites Strack v. Roetzel, 46 Okl. 695, 148 P. 1017; Davies v. Fullerton, 150 Okl. 99, 300 P. 650; Bordner v. Gordon, 94 Okl. 165, 221 P. 50;

Miller v. Roberts, 140 Okl. 271, 282 P. 1104; Powers v. Rude, 14 Okl. 381, 79 P. 89, and other similar cases. We have carefully read these authorities but do not find them decisive in connection with the unambiguous contract presented here. They all dealt with situations where the *terms of the contract itself* were indefinite or ambiguous. Such is not the case here.

In the case now before us, defendant does not argue that the provisions of the contract itself are uncertain, or that the intentions of the parties cannot be ascertained. The argument goes entirely to the fact that the contract deals with two different tracts of land, and that without extrinsic evidence, it is impossible to tell which tract is to be conveyed. However, it should be noted that each tract, by the terms of the contract, is capable of exact and precise location, there being no dispute whatsoever as to the boundary lines involved. The conditions under which the tract will be "moved" south are clearly and definitely set out. It is not argued, and the evidence does not show, that "moving" the tract south 165 feet from the most southerly oil well would change the shape of the tract, or cause it to infringe upon the property of adjoining land owners.

See 81 C.J.S. Specific Performance § 33, wherein it is said:

"* * * the subject matter must be, *and it is sufficient if it is,* described so that it may be aided and made definite by such extrinsic evidence as is admissible for such purpose." (Emphasis supplied.)

We hold that the terms of the contract under consideration are sufficiently definite as to the lands concerned to support an order for specific performances.

The judgment of the trial court is affirmed.

BLACKBIRD, V. C. J., and WELCH, DAVISON, HALLEY, JOHNSON, IRWIN and BERRY, JJ., concur.