**Lula E. RUBLE, Plaintiff in Error,**

v.

**PHILLIPS PETROLEUM COMPANY,**
a Corporation, Defendant in Error.

No. 39810.

Supreme Court of Oklahoma.
July 16, 1963.

F. W. Files, Pawhuska, for plaintiff in error.

Wm. J. Zeman, Lloyd G. Minter, Kenneth Heady, Bartlesville, for defendant in error.

JACKSON, Justice.

In the trial court, Phillips Petroleum Company, as plaintiff, sued defendant Lula E. Ruble for specific performance of an option to purchase real estate contained in a lease agreement between the parties. Judgment was for Phillips and Mrs. Ruble appeals.

The sole issue before the trial court was whether an option to purchase admittedly contained in a 1929 lease contract had been cancelled or nullified by later amendments and modifications of the lease.

The record shows in pertinent part that in 1929 Phillips leased a vacant lot from Mr. Ruble with a view towards building and operating a filling station thereon. The lease was for a term of fifteen years with no express provisions for renewal or extension; the agreed rental was $60.00 per month. Under paragraph 13 of the lease, Phillips had the right to remove its equipment within 30 days after termination, and the option of removing any buildings it had erected, or of leaving them on the premises. Under paragraph 14, for a separately stated consideration, the receipt and sufficiency of which is not questioned, Phillips had an option to purchase the property "at any time during the term of this lease or any renewal or extension thereof" for a specified sum. The phrase " * * * term of

this lease or any renewal or extension thereof * * *", appears in one form or another a total of seven times in the lease.

On June 17, 1941, the parties executed an instrument titled "Amendment to Lease", the opening paragraph of which is as follows:

"Phillips Petroleum Company contemplates the expenditure of a substantial sum in the erection of new improvements on the property hereinafter described and it is unwilling to make this expenditure unless it can be assured of the right to *extend* its lease under favorable terms, and whereas, Lessor is desirous of encouraging the erection of said additional improvements because they will increase the chances of Phillips Petroleum Company continuing to rent the premises; *in consideration of all of which* the undersigned parties hereby agree that: * * *." (emphasis supplied).

Under the 1941 amendment, it was agreed that "that certain lease dated December 2, 1929 * * * is hereby by mutual agreement *amended* to this extent * * *". There followed an agreement by Phillips to erect on the premises improvements of a value of not less than $3500.00 "which improvements and improvements now on the property (equipment excluded) are to become the property of lessor at the expiration of the lease". There was also an agreement that Phillips should have an option "to renew or extend said lease" for a total of 15 years at a rental during such period of $50.00 per month. Another paragraph of said "Amendment to Lease" is as follows:

"It is understood and agreed that all of the remainder of said lease and all of the provisions and terms thereof shall remain in full force and effect."

Under the 1941 amendment, Phillips quite plainly gave up its option to remove the buildings from the premises, and at the end of the lease they were to become the property of Mrs. Ruble, the same as the land upon which they were built. However, it did not give up its option to purchase, acquired for a separately stated consideration, and under the paragraph last quoted above, it remained in full force and effect.

On September 30, 1942, and again one year later, the parties executed instruments titled "Modification of Lease" in which Mrs. Ruble voluntarily agreed to accept only $50.00 per month as rental for periods of one year only in each case, instead of the $60.00 per month to which she was entitled for the first fifteen years under the 1929 lease. Both of these instruments provide that "In consideration of the mutual advantages to be derived therefrom, it is hereby agreed that the certain lease * * * dated December 2, 1929 * * *" as amended " * * * is hereby amended and supplemented to the following extent * * *" (to provide for a rental of $50.00 per month for one year). Both instruments further provided that "It is further understood that at the expiration of said lease hereinabove referred to, all of the buildings and improvements * * * shall become the property of Ruble; all equipment * * * shall remain the property of Phillips * *". There was no reference in either instrument to the option to purchase. Both instruments include the sentence, "As here modified, said lease is confirmed".

In her brief on appeal, Mrs. Ruble presents six propositions, each of which consists of a well recognized rule for the construction and interpretation of contracts. Under these propositions, she discusses the particular lease contract involved, with its amendments and modifications, and certain letters between the parties which were introduced in evidence by stipulation, subject to objection by Phillips as to their admissibility. She then concludes that under the facts and circumstances shown, and in view of the language of the instruments, the option to purchase which Phillips admittedly had under the terms of the original instrument was cancelled or nullified by the later amendment and modifications.

While the question presented is not entirely free from difficulty, we cannot agree with this conclusion.

She places special reliance upon the provisions in the amendment and the modifications to the general effect that at the termination of the tenancy, the buildings and improvements should become the property of Mrs. Ruble. She contends, in effect, that unless these provisions are interpreted as cancelling the Phillips' option to purchase, the 1941 amendment is without consideration and unenforcible. However, the opening paragraph of the 1941 amendment recites that the consideration moving to Mrs. Ruble is the increased likelihood of " * * * Phillips Petroleum Company continuing to rent the premises * * * ". It is conceded that Phillips *did* exercise its option to rent the premises for the additional 15 years, at a total rental of about $9,000.-00.

■ She also suggests that since the agreed rental for the second 15 year period provided for in the 1941 amendment was $50.00 per month instead of $60.00, she actually suffered a detriment instead of a benefit, and such amendment is therefore without consideration and void. It is perhaps unnecessary to point out that without the 1941 amendment, and the 15 year option therein contained which Phillips exercised, she might have had no tenant at all for the second 15 year period.

We also find another consideration moving to Mrs. Ruble by virtue of the 1941 amendment. Under the 1929 lease, it was possible that Mrs. Ruble might be left, at its termination, exactly as she was at its beginning—with a vacant lot and nothing more. Under the 1941 amendment, this possibility was removed. Since Phillips no longer had the option to remove the buildings, she was assured of having either (1) the lot *with the improvements on it,* or (2) the purchase price agreed upon in the option to purchase contained in the 1929 lease.

Mrs. Ruble also argues that the 1941 amendment was not a renewal or extension of the 1929 lease but constituted a new and separate contract, and that upon its execution, the 1929 lease with its option to purchase became inoperative. In view of the language used by the parties, and their conduct, this argument cannot be sustained. Although it is true that the 1929 lease contained no express provisions for renewal or extension, it did give to Phillips an option to purchase "at any time during the term of this lease *or any renewal or extension thereof",* and language similar to that quoted appears at six other places in the lease. The 1941 amendment and the 1942 and 1943 modifications all quote specifically and precisely identify the 1929 lease by date, place of recording and names of parties, and then provide that such lease is "amended", "supplemented" or "modified" in the particulars set out. The 1941 amendment specifically provides that "all of the remainder of said lease * * * shall remain in full force and effect". The 1942 and 1943 modifications both contain the sentence "As here modified, said lease is confirmed". In each case, the word "lease" can only mean the 1929 lease.

In a stipulation filed in the trial court, Mrs. Ruble, defendant there, stipulated that "Plaintiff herein has at all times performed the covenants and covenants and conditions of said Station Site Lease, *as amended,* and has during the primary *and extended term of said lease* paid to Defendant all rentals provided therein as the same came due and in addition *has paid all taxes* on said property." (Emphasis supplied). The requirement that Phillips pay the taxes on the premises was contained in paragraph 6 of the 1929 lease, and it was not repeated in the 1941 amendment, or in the 1942 and 1943 modifications. Phillips' payment of the taxes for the entire 30 year period thus must have been in compliance with the terms of the 1929 lease, and Mrs. Ruble does not argue that Phillips was not required to pay them, or that it was a mere volunteer in that regard.

We have previously noted that defendant Ruble introduced in evidence copies of extensive correspondence between her and Phillips with regard to the amendment and modifications. We have examined such correspondence carefully and find that it

does not support the argument that it was the intention of the parties to the amendment and modifications that the option to purchase contained in the 1929 lease should be cancelled. On the other hnad, there are definite indications to the contrary. In a letter dated April 23, 1941, concerning the proposed 1941 amendment, a Phillips official said that " * * * *should we not exercise our options,* the buildings would be turned over to you" (emphasis supplied). In a letter dated June 6, 1941, enclosing the proposed 1941 amendment, the same official said that " * * * in the event we do not exercise the option to renew the lease, the buildings would become your property". Of course Phillips did exercise its option to renew and its option to purchase.

In view of our conclusion herein, it is unnecessary to consider the argument of Phillips that the correspondence was inadmissible and incompetent.

In the briefs, the parties have cited many statutory provisions and authorities in support of sound and generally accepted rules for the construction and interpretation of contracts. However, as is so often true where long and detailed contractual provisions are concerned, no case precisely in point on the question here involved is cited; that is, no case involving a contract exactly, or even substantially, like the one before us, is brought to our attention. Nevertheless, we have noted and considered the rules cited, and our review of the record before us has been in accordance with those rules.

It should be specifically noted that the defense interposed in the trial court was not based upon any alleged fraud or false representations by Phillips; as a matter of fact, in her brief Mrs. Ruble expressly disavows any implications of fraud or deceit. There is no allegation or evidence that either party was not at all times in perfect good faith, and the pleadings and record justify the presumption that the 1929 lease, and its later amendments and modifications, were executed only after arms-length negotiations in which no overreaching was involved.

After a careful review of the record before us, we cannot say that the judgment of the trial court in this action of equitable cognizance was clearly against the weight of the evidence. In such case, it will not be disturbed on appeal. Anderson v. Wolfe, Okl., 368 P.2d 655.

The judgment of the trial court is affirmed.

HALLEY, V. C. · J., and WELCH, DAVISON, WILLIAMS, IRWIN and BERRY, JJ., concur.